UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, by and through his Parents and next friends, Mr. & Mrs. Robert Doe; MR. ROBERT DOE; and MRS. ROBERT DOE , <br>     *Plaintiffs*, <br><br>       *v.* <br><br> DARIEN BOARD OF EDUCATION; TOWN OF DARIEN; ZACHARY HASAK, individually; ROBIN PAVIA, individually; MELISSA BELLINO, individually; DONALD FIFTAL, individually; STEPHEN FALCONE, individually; MARY LEE FISHER, individually; NICOLE RUOSPO, individually; MARC MARIN, individually; CARLEEN WOOD, individually; JOETTE KATZ, Commissioner of the Dept. of Children and Families, in her official capacity; INGRID AARONS, individually; and JOHN WOODRING, individually; <br>     *Defendants.* | Civil No. 3:11cv1581 (JBA) <br><br> September 17, 2012 |

RULING ON DEFENDANTS' MOTIONS TO DISMISS

On December 28, 2012, Plaintiff John Doe, and his parents Mr. and Mrs. Robert Doe, filed a First Amended Complaint [Doc. # 28] claiming that he was sexually assaulted by Darien school system employee Defendant Zachary Hasak and physically assaulted by Darien school system employee Defendant Nicole Ruospo, and that the Defendants Board of Education and Joette Katz, who is sued in her official capacity as Commissioner of the Department of Children and Families, violated their rights under the Fourteenth Amendment of the United States Constitution, the Civil Rights Act of 1871, 29 U.S.C. § 794, Title IX (20 U.S.C. § 1681(a)), the Americans with Disabilities Act, and § 504 of the Rehabilitation Act of 1973. Defendants Joette Katz and Ingrid Aarons have moved to

dismiss [Doc. ## 33, 34] Plaintiffs' First Amended Complaint[1] based on lack of standing, absolute immunity, sovereign immunity, qualified immunity, and failure to state a claim upon which relief could be granted.  Defendant Board of Education has moved [Doc. # 57] to dismiss Plaintiffs' Second Amended Complaint [Doc. # 128].  For the reasons discussed below, Defendants Katz and Aarons' Motions to Dismiss will be granted, and Defendant Board of Education's Motion to Dismiss will be denied.

I.      RELEVANT FACTUAL BACKGROUND

Plaintiff John Doe ("John")  is a fourteen–year–old student in the Darien Public School system who is entitled to special education under the Individuals with Disabilities Education Improvement Act ("IDEA").  (Second Am. Compl. [Doc. # 128] ¶ 1.)  Plaintiffs Mr. and Mrs. Robert Doe ("Plaintiff Parents" or "Parents") are his parents.  (*Id.* ¶ 2).  During the 2009–2010 school year, John attended the fifth grade at Tokeneke Elementary School, where his Individual Education Plan ("IEP") required Defendant Board of Education to provide a one–on–one paraprofessional to him throughout the school day.  (*Id.* at ¶¶ 17–18.)  Defendant Zachary Hasak, the nephew of the Darien Director of Special Education Defendant Robin Pavia, was hired as John's paraprofessional.  He was not a certified teacher or special education teacher and was to be supervised by Pavia, Defendant Melissa Bellino (John's special education teacher) and Defendant Mary Lee Fisher (Principal of Tokeneke Elementary School).  (*Id.* ¶¶ 19–20.)

---

[1] Before the Motions to Dismiss were fully joined, Plaintiffs moved to amend the First Amended Complaint.  On September 6, 2012, the Court granted Plaintiffs' Motion to Amend.  The Motions to Dismiss the First Amended Complaint will therefore be construed as Motions to Dismiss the Second Amended Complaint. (*See* Ruling Granting Plaintiffs' Motion to Amend [Doc. 124] at 3.)

Under his IEP, John was to receive a full day of instruction from qualified regular and special education teachers. As Hasak was not a certified teacher, he was not to be alone with John for any significant amount of time without direct supervision from one of John's certified instructors. (*Id.* ¶ 21). Nevertheless, on one or more occasions, Hasak took John into an empty classroom. Once he was alone with John, Hasak exposed himself to John, made sexual advances toward John, and encouraged John to engage in sexual activity with him. (*Id.* ¶ 24.) When John rejected Hasak's advances, Hasak told John not to tell anyone what had happened, threatening to hurt John if he reported the incidents. (*Id.* ¶ 25.)

Despite these threats, John told Bellino about Hasak's behavior. Instead of reporting the alleged abuse to the school system, Bellino told John not to tell anyone else about the incidents because Hasak could get in trouble. (*Id.* ¶¶ 27, 29.) Finally, on October 15, 2009, John told his father and mother about Hasak's sexual advances. They immediately reported the abuse to the independent consultant assigned to John's program, the Assistant Superintendent of Schools, Defendant Stephen Falcone, and the police. (*Id.* ¶¶ 32–33, 36.) Falcone reported the alleged abuse to the Department of Children and Families ("DCF") and had school employees interview John regarding the incident. The employees conducting the interview told Plaintiff Parents that they believed John's statements that he had been abused by Hasak. (*Id.* ¶ 34.) The Board of Education also filed a complaint with DCF and placed Hasak on paid administrative leave. (*Id.* ¶ 11.)

Pursuant to police protocol for handling sexual abuse cases involving children with disabilities, the Darien Police Department referred John to the Child Guidance Center of Southern Connecticut ("the Center") for a forensic interview. (*Id.* ¶ 38.) The interview was conducted on October 21, 2009, and the Center issued an opinion that John had been

sexually assaulted by Hasak.  (*Id.* ¶¶ 39–40.)   Plaintiff Parents requested a copy of the Center's written findings and a videotape of their son's interview, but they did not receive either.  (*Id.* ¶ 40.)

On October 15, 2009, DCF began an investigation into Hasak's conduct and found probable cause that John had been abused, based in large part on the Center's findings.  (*Id.* ¶ 41.)  On December 22, 2009, after having refused to participate in the initial investigation, Hasak requested that DCF revise its findings.  (*Id.* 41–42.)  Plaintiff Parents requested to participate in any DCF proceedings regarding Hasak's request for revision, but were told by a DCF attorney that they could not participate.  (*Id.* ¶ 42.)

In February 2010, DCF reversed its finding that Hasak had abused John Doe after an internal review was conducted by Defendant Ingrid Aarons, the Program Manager of the Norwalk Office of DCF.  (*Id.* ¶ 43).  Aarons's decision was based on information from the State's Attorney's Office that Hasak had passed lie detector tests regarding the alleged abuse and that as a result of these tests, and the prosecutor's concern that John would not be an effective witness because of his disability, Hasak would not be prosecuted.  (*Id.*)  Plaintiff Parents' repeated requests to rebut the findings of the internal review have been denied.  (*Id.* ¶ 44.)

In May 2010, Hasak was restored as a full–time paraprofessional in the Darien Public Schools.  (*Id.* ¶ 46.)  In September 2010, John was transferred to Middlesex Middle School in Darien, where Defendant Nicole Ruospo was assigned as his special education teacher.  (*Id.* ¶ 51.)  During the 2010–2011 school year, Ruospo abused John on several occasions by tripping him and knocking him on the floor.  (*Id.* ¶ 52.)  On November 23, 2010, Defendant

Marc Marin witnessed one such incident.  Despite repeated reports of this abuse by Plaintiff

Parents, the Board of Education failed to refer the matter to DCF.  (*Id.*  ¶¶ 52–54.)

After this lawsuit was filed in October 2011, DCF commenced two additional abuse

investigations involving John which are ongoing:  the first investigation involves the alleged

physical abuse by Ruospo, and the second investigation involves allegations of abuse by a

private provider of special education services.  (*Id.*  ¶ 57.)

II.     DISCUSSION[2]

A.      Katz and Aarons's  Motions to Dismiss

Defendants Katz and Aarons move to dismiss Count Nine and Defendant Katz

moves to Dismiss Count Three of the Second Amended Complaint on the grounds of lack

of standing, sovereign immunity, absolute immunity, failure to state a claim, and qualified

immunity, pursuant to Fed.  R.  Civ.  P.  12(b)(1) and 12(b)(6).  Katz, the Commissioner of

---

[2]        "[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical." *Scholastic Corp.  v.  Najah Kassem & Kasper & Del Toldeo LLC*, 398 F.  Supp. 2d 402, 404 (D.  Conn.  2005) (quoting *Lerner v.  Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).  *But see Thompson v.  County of Franklin*, 15 F. 2d 245, 249 (2d Cir.  1994) (noting that the party invoking the court's jurisdiction has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the movant has the burden of proof).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).  "When reviewing a motion to dismiss a court must accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir.  2009) (internal quotation marks and citations omitted).

DCF is sued in her official capacity and Aarons is sued in her individual capacity.  In Count

Three, Plaintiffs allege that by failing to credit and give proper weight to John's claims of

abuse, DCF discriminated against him on the basis of the severity and nature of his

disability, in violation of the ADA and § 504 of the Rehabilitation Act.   In Count Nine,

Plaintiffs allege that DCF's internal review process violated their constitutional rights under

the Due Process Clause of the Fourteenth Amendment in that they were deprived of a

meaningful opportunity to know the basis for the DCF determination of abuse and to

participate in a hearing or review if they disagreed with that determination.  Because the

Court agrees that Plaintiffs lack standing to assert their claims, the Court will not address

Defendants Katz and Aarons's additional arguments that they are entitled to immunity.

      *1.*     *Standing*

      Standing is a federal jurisdictional question.  *See Altman v. Bedford Cent. School Dist.*,

245 F.3d 49, 69 (2d Cir.  2001).   "To establish standing, a plaintiff must demonstrate: (1) an

injury in fact that is concrete and particularized and actual or imminent, not conjectural or

hypothetical; (2) a causal connection between the injury and the conduct complained of; and

(3) redressability of the injury by a favorable decision."  *Harty v.  Simon Property Group, L.P.*,

428 F.  App'x  69, 71 (2d Cir.  2011) (quoting *Lujan v.  Defenders of Wildlife*, 504 U.S. 55,

560–61 (1992)) (internal citations omitted).  "Moreover, a plaintiff seeking injunctive relief

cannot rely only on past injury to satisfy the injury requirement but must show a likelihood

of future harm."  *Id.*  (citing *City of Los Angeles v.  Lyons*, 461 U.S. 95, 105 (1983)).

      Katz and Aarons argue that Plaintiffs lack standing for their due process, ADA, and

§ 504  claims because the DCF internal review process conducted under Conn.  Gen. Stat.

§ 17a-101k is an administrative enforcement decision akin to the decision whether or not

to pursue a criminal prosecution.  The Supreme Court has held that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. . . . [A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  The Second Circuit has also extended the principle that an individual lacks standing to challenge the criminal prosecution or nonprosecution of another to civil enforcement cases, such as attorney disciplinary proceedings.  *See In re Attorney Disciplinary Appeal*, 650 F.3d 202, 203–04 (2d Cir. 2011) (per curiam) (holding that a third–party lacks standing to challenge a district court's decision not to discipline an attorney and acknowledging that the decision is "consistent with the rule that 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another,' and therefore 'lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.'" (quoting *Linda R.S.*, 410 U.S. at 614)).   In that case, the Second Circuit held that the plaintiff who filed a disciplinary complaint "[wa]s an informer and nothing more, and as such has no right to be heard at any stage of the proceedings . . . . The plaintiff has averred nothing to show that his interest in the matter . . . differed in any particular from the interest of any other citizen and member of the bar, none of whom have standing as a party in interest." *Id.* at 203 (internal quotation marks and citations omitted).

At least one state court has held that a child does not have standing to challenge the decision by a state child welfare agency that a report that the child has been abused is unfounded.  In *Daniel S. v. Dowling*, 684 N.Y.S. 2d 99 (N.Y. App. Div. 1998), *appeal dismissed by* 93 N.Y.2d 919 (N.Y. 1999), the New York Appellate Division held that the "failure to provide a fair hearing to the child named in an unfounded report does not

constitute a denial of procedural due process." *Id.* at 99–100.   Under New York law, which is similar to the Connecticut statutory scheme, only an accused abuser has the right to seek review at a fair hearing to challenge a report of abuse, and therefore "the child reported to the State Central Register of Child Abuse and Maltreatment [] lacks standing to challenge the determination that the report was unfounded." *Id.* at 99.   DCF's internal review and reversal of its finding that the report that Hasak abused John was substantiated and its decision to list, and then de–list, Hasak on the state child–abuse registry is analogous to the determination that a report of abuse was unfounded in the *Daniel S.* case.   A state child welfare agency's review of its decision to list an individual on the state child–abuse registry is sufficiently similar to a prosecuting authority's review of a criminal complaint that a third party lacks a judicially cognizable interest in the prosecution or nonprosecution of that complaint, as was held in *Linda R.S.*  While Plaintiffs here certainly had a personal interest in the outcome of DCF's internal review of the decision to list Hasak's name on the state child–abuse registry, legally, this interest is not distinguishable from the general public's interest in protecting children. The internal review procedures were established to safeguard the due process rights of those who have been accused of abuse and listed on the state child–abuse registry, and thus Hasak, rather than Plaintiffs, was the party–in–interest for the internal review conducted by Aarons.   Therefore, Plaintiffs lack standing to bring this suit against Defendants Katz and Aarons.

    *2.  Failure to State a Claim*

    Furthermore, even if Plaintiffs could establish that they had standing for these claims, they have failed to state a claim for which relief can be granted, because they have no legal

entitlement under either the Fourteenth Amendment or the ADA and § 504 to the outcome of this process.

> a.   Claims Under 42 U.S.C. § 1983 (Count Nine Against Defendants Katz and Aarons)

To sustain a cause of action under § 1983, a plaintiff must allege that "the conduct at issue [was] committed by a person acting under color of state law and [] deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (internal quotation marks omitted). In this case, Plaintiffs claim that the conduct of DCF's internal review process violated their due process rights, established by Conn. Gen. Stat. § 17a-101, *et seq.*, to have complaints of abuse investigated by DCF and to have appropriate action taken on those complaints to protect alleged victims of abuse, such as the provision of protective services.  Specifically, at oral argument, Plaintiffs' counsel pointed to Conn. Agencies Regs. § 17a-101(e)-5 (stating that if a DCF investigation produces evidence of abuse, DCF "will take action deemed necessary to protect the child.  Such action may include: . . . counseling services [and] referral to and utilization of other community resources such as social, health, education and employment services) and Conn. Gen. Stat. § 17a-101k (governing the process for listing an allegeed abuser's name on the state child–abuse registry) to show that Plaintiffs had an entitlement to protective services under Connecticut law.  Katz and Aarons argue that the statutory scheme regulating the reporting and investigation of complaints of abuse does not give rise to any constitutionally protected individual entitlement.

The Supreme Court has recognized that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."

*DeShaney v. Winnebago*, 489 U.S. 189, 197 (1989).  In *DeShaney*, the state child welfare service had received numerous complaints that the four–year–old plaintiff was being abused by his father, but took no steps to remove the child from his father's care. Eventually, the plaintiff was beaten so severely by his father that he was left permanently brain damaged. Despite what it admitted were "undeniably tragic" facts, *id.* at 191, the Supreme Court determined that the state had no duty to protect the child from his father, and the failure to properly investigate the allegations of abuse could not give rise to a substantive due process claim.  Thus, Plaintiffs can assert no substantive due process right to DCF protective services arising from the complaints of abuse by Hasak.

Plaintiffs also fail to state a claim that their procedural due process rights were violated by DCF's conduct of the internal review process.  The Supreme Court has held that "[t]he procedural component of the Due Process Clause does not protect everything that may be described as a benefit: To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotations omitted).  "Such entitlements . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (internal quotations omitted).  "A benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* Based on this reasoning, the Supreme Court in *Town of Castle Rock* held that a Colorado law stating that "a peace officer shall arrest" an individual where there is probable cause that he has violated a restraining order did not create an entitlement in the enforcement of restraining orders.  Because this law was found to be discretionary, the Supreme Court held

that the plaintiff's procedural due process rights had not been violated when the police refused to arrest her husband for violating a restraining order, where the police department's refusal to take action contributed to the death of the husband and his three daughters.

In *Sealed v. Sealed*, 332 F.3d 51 (2d Cir. 2003), the plaintiffs alleged that DCF's failure to place them in protective custody to protect them from their stepfather's abuse constituted a violation of their due process rights under the statutory child welfare scheme established by Conn. Gen. Stat. § 17a-101. The Second Circuit first found that the general policy statement expressed in Conn. Gen. Stat. § 17a-101(a) "to protect children whose health and welfare may be adversely affected through injury and neglect," did not create any "discrete rights or reasonable expectations in any specific protective measures." *Sealed*, 332 F.3d at 57 (citing *Savage v. Aronson*, 214 Conn. 256, 279 n.5 (Conn 1990) ("[The] general statement of the goals of our child welfare laws, although valuable as an aid in construing ambiguous provisions of such statutes, creates no rights beyond those specifically provided by the statutes intended to implement the statement of policy.")). The Second Circuit certified to the Connecticut Supreme Court the question of whether Connecticut law, as expressed in Conn. Gen. Stat. § 17a-101g(c), mandated removal once abuse had been substantiated. In *Teresa T. v. Regalia*, 272 Conn. 734, 751 (Conn. 2005) the Connecticut Supreme Court held that the statutory child welfare scheme under § 17a-101 is discretionary and DCF officials are not required to remove a child once a determination has been made that probable cause of abuse exists. In light of the holding in *City of Castle Rock* that discretionary actions cannot give rise to a property interest, these rulings indicate that Connecticut law does not establish an entitlement to the provision of protective services by DCF.

In this case, Plaintiffs claim that Conn. Gen. Stat. § 17a-101k entitles them to participation in DCF's internal review process through notice and fair hearing once an allegation of abuse has been substantiated by DCF investigation.  If Connecticut law does not establish an entitlement to DCF protective services because officials can "grant or deny it in their discretion," it must similarly be the case that the statutory scheme creates no entitlement to participate in the discretionary internal review to determine whether or not an alleged abuser's name will remain on the state child abuse registry pending an administrative hearing.  Plaintiffs have failed to establish that they have any constitutional rights grounded in the conduct of the DCF internal review process, and thus have failed to state a claim under § 1983.  Defendants Katz and Aarons's Motions to Dismiss will therefore be granted as to Count Nine.

b.      Claims Under the ADA and § 504 of the Rehabilitation Act
(Count Three Against Defendant Katz)

In order to establish a violation of Title II of the ADA, a plaintiff must establish: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2003). The standard is the same for Plaintiffs' § 504 claims, *id.* at 35 (quoting *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999)), except that to establish a violation of the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  Katz alleges that only John is a "qualified individual" with a disability and therefore Plaintiff Parents have failed to state a claim on their own behalf.  Furthermore,

Katz alleges that John fails to identify any services, programs or activities that were denied to him as a result of DCF's decision to remove Hasak's name from the state child–abuse registry and has failed to adequately claim that this decision was discriminatorily based on the nature and severity of John's disability.

Plaintiffs counter that under the anti-interference provisions of the ADA, Plaintiff Parents are "qualified individuals" for the purposes of establishing their ADA claim. *See* 42 U.S.C. § 12203(b) ("It shall be unlawful to coerce, intimidate, threaten, or interfere with an individual . . . on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.") However, Plaintiffs do not allege that DCF took any action to coerce, intimidate or threaten Plaintiff Parents, and do not allege that DCF's refusal to allow them to participate in the internal review process was "on account of" their having pursued a complaint in behalf of their disabled son.

Plaintiffs also cite to *Doe v. County of Centre*, 60 F. Supp. 2d 417 (M.D. Pa. 1999), to contend that Plaintiff Parents may assert their rights under the ADA and § 504 because they are qualified individuals based on their association or relationship with an individual with a disability—i.e., their son John. *Id.* at 427 (citing 28 C.F.R. § 35.130(g) to hold that the ADA "was intended to protect otherwise qualified individuals from discrimination because they are known to have an association or relationship with an individual with a known disability," and finding that the adoptive parents of a child with AIDS are such individuals with a close association with a person with a known disability). In *County of Centre*, however, Plaintiffs alleged that they were excluded from participation in a foster care program on the basis of their son's disability. *Id.* at 418–19. Plaintiffs Mr. and Mrs. Robert

Doe do not allege that their inability to participate in the DCF internal review process is based on their status as parents of a child with a disability, as all parents of children who are the subject of allegations of abuse are similarly excluded from the DCF internal review and appeal process. Thus, for the purposes of their ADA and § 504 claims, Plaintiff Parents have failed to state a claim under the ADA or § 504.

John claims that DCF's investigation of abuse allegations are a "service, program or activity" within the meaning of the ADA, and that he was denied access to this service because DCF failed to give proper weight to his statements on the basis of the severity of his disability. However, Plaintiffs fail to cite to any case law supporting the conclusion that the DCF investigation and internal review process is a "service, program or activity" within the meaning of the ADA. Plaintiffs concede that the diagnostic performed by the Center was appropriate and point to no deprivation of service beyond the claim that Aarons did not give proper weight to John's statements when conducting the internal review of the allegations against Hasak. The discretionary determination of what weight to give to evidence in an internal review of abuse allegations is not a "service, program or activity" within the meaning of the ADA. *Cf. In re Joseph W.*, 305 Conn. 633, 650–51 (Conn. 2012) (finding that neglect proceedings to terminate parental custody are not "services, programs or activities within the meaning of the ADA" (quoting *In re Antony B.*, 54 Conn. App. 463, 471–72 (Conn. App. Ct. 1999))). Plaintiffs also asserted at oral argument that they need only allege general "discrimination" by an agency in order to have an actionable claim under the ADA and § 504. As will be discussed below, Plaintiffs' contentions do not accurately reflect the law. Plaintiffs have no cognizable interest in the internal review and hearing rights established under Conn. Gen. Stat. § 17a-101. These procedures are provided as due process safeguards

14

for alleged abusers, and not the victims of abuse.  Thus John is not a member of the class of individuals against whom DCF could discriminate in carrying out this internal review, and cannot claim injury from the results of this process.  Therefore, Plaintiff John Doe fails to state a claim under the ADA or § 504 and Defendant Katz's Motion to Dismiss will be granted with respect to Count Three.

B.      The Board of Education's Motion to Dismiss

The Board of Education moves to dismiss Count One of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiffs have failed to state a claim for which relief can be granted under the ADA and § 504 of the Rehabilitation Act.  The Board of Education argues that Plaintiffs have failed to allege a denial of a benefit and have therefore failed to state a claim under the ADA or § 504.

Plaintiffs counter that they need not assert a deprivation of a benefit or exclusion from a program in order to state a claim under the ADA and § 504, and that they need only allege that they have been the subject of discriminatory conduct by the employee of a public entity.  In support of this position, Plaintiffs cite several Second Circuit cases.  For example, Plaintiffs allege that *Henrietta D*, 331 F.3d 261, finding that plaintiffs with AIDS were denied access to public welfare benefits, establishes that a plaintiff need only allege discrimination to state a claim under the ADA:  "A plaintiff can prevail either by showing discrimination or by showing deni[al] of benefits of public services."  *Id.* at 276 (alterations in original) (internal quotation marks omitted).  However, Plaintiffs over–read this sentence.  In context, quoted portion above served to distinguish claims of disparate impact from  claims for failure to accommodate, as the next line of the opinion makes clear:   "Therefore, we hold that a claim of discrimination based on failure to accommodate is distinct from a claim of

discrimination based on disparate impact.  Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Id.* at 276–77.

Plaintiffs also cite *Messier v. Southbury Training School*, 562 F. Supp. 2d 294 (D. Conn. 2008) for this same principle.  The court in *Messier* held that the State of Connecticut had discriminated against individuals with disabilities by institutionalizing them without considering whether the services the individuals were receiving could be provided in a more integrated setting.  *Id.* at 320–42.  Plaintiffs argue that the plaintiffs in *Messier* were not denied or excluded from a benefit, but were discriminated against because they were institutionalized.  Similarly, Plaintiffs cite *C.C. ex rel Ward v. State of Tennessee*, No. 3:09-0246, 2010 WL 3782232 (M.D. Tenn. Sept. 21, 2010), which held that "[p]laintiff need not establish that he was excluded from participating in or was denied the benefits of a state program.  A plaintiff may meet the third prong of the ADA/Rehabilitation Act test by alleging that the plaintiff was [s]ubjected to discrimination *under the program* solely because of her disability." *Id.* at *9 (alteration in original) (emphasis added).  In that case, the court found that a plaintiff with mental impairments had alleged a claim under the ADA and § 504 where he was beaten by child welfare employees while in their custody, based on his arguments that the employees had discriminated against him in the attack as a result of his disability and that the state child welfare service had failed to adequately train its employees regarding discrimination against and treatment of the plaintiff based on his disability.  Contrary to Plaintiffs' argument, however, in *Henrietta D., Messier*, and *C.C. ex rel Ward*, there was some benefit, service, or program that was available to both disabled and non-

disabled individuals, and the defendants either failed to provide reasonable accommodations to ensure access to this benefit, service, or program, or provided access in a discriminatory manner on the basis of the plaintiffs' disabilities or the severity of their disabilities.

Here, Plaintiffs have alleged that the Board of Education discriminated against Plaintiff John Doe on the basis of the severity of his disability in the provision of a benefit. Plaintiffs allege that by failing to properly train employees on conducting non–discriminatory investigations of abuse of severely disabled children, and by failing to have adequate policies and procedures regarding the reporting and investigation of abuse of severely disabled students, the Board of Education failed to provide John with equal access to a safe educational environment.[3]  Plaintiffs claim that employees of the Board of Education failed to report the abuse of John after he told them about the incidents of abuse by Hasak and on at least one occasion, when an employee witnessed abuse by Defendant Ruospo.  Plaintiffs also claim that the Board of Education returned Hasak to work in the school system and allowed Ruospo to continue working at the school where John was enrolled after these incidents.  Plaintiffs allege that normal reporting and investigation procedures were not followed in this case because the Board of Education discredited John's statements as a result of his severe disability.  Thus, taking all facts alleged in the complaint as true, and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have alleged sufficient facts to state a claim for relief under the ADA and § 504.

---

[3] At oral argument, counsel for the Board of Education conceded that a safe public education was a benefit under the ADA, and stated that the purpose of the Motion to Dismiss would be satisfied if it could be clarified that Plaintiffs were not alleging a denial of a Free Appropriate Public Education ("FAPE").  Plaintiffs' counsel stated that Plaintiffs were not claiming a failure to provide a FAPE at this time.

17

V.      Conclusion

For the reasons discussed above, Defendant Katz and Aarons's Motions to Dismiss [Doc. # 33, 34] are GRANTED, and Katz and Aarons are dismissed from this case. Defendant Board of Education's Motion to Dismiss [Doc. # 57] is DENIED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of September, 2012.