UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, by and through his Parents | : | CASE NO.: |
| and next friends, Mr. & Mrs. Robert Doe; and | : | 3:11cv01581 (JBA) |
| MR. ROBERT DOE; MRS. ROBERT DOE | : | |
|     Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| DARIEN BOARD OF EDUCATION | : | |
| TOWN OF DARIEN, | : | |
| ZACHARY HASAK, individually, | : | |
| ROBIN PAVIA, individually, | : | |
| MELISSA BELLINO, individually, | : | |
| ANDREA CUNHA, individually, and | : | |
| LAURA CONTE, individually, | : | |
| | : | |
|     Defendants | : | December 15, 2014 |

FIFTH AMENDED COMPLAINT

I.  PRELIMINARY STATEMENT

    This case arises under the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1871, the Americans with Disabilities Act, 42 U.S.C. § 12132 et seq. ("ADA"), § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 20 U.S.C. § 1681(a)(Title IX) for violations of Plaintiffs' rights secured by these federal laws and the United States Constitution, and under Connecticut law, for Defendants' intentional, negligent and reckless conduct, causing injury to the Plaintiff student.

II.  JURISDICTION

    This Court has jurisdiction over Plaintiffs' claims under the Fourteenth Amendment to the United States Constitution, the ADA, § 504 of the Rehabilitation Act of 1973, and Title IX under 42 U.S.C. § 1983 and 42 U.S.C. 1331.  Jurisdiction over the Plaintiffs' pendent state claims is conferred by Article III of the United States Constitution and 28 U.S.C. § 1367(a)

because they arise from and out of the same case or controversy as Plaintiffs' federal claims.

III.   <u>PARTIES</u>

1.   The Plaintiff John Doe ("Student") is now seventeen years old and is a Darien Public School student who has been outplaced. He was twelve at the time of the incidents at issue.  At all times relevant to this complaint, the Defendant Darien Board of Education has determined that the Student is entitled to special education and related services under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 et seq. ("IDEIA") under the disability category "Intellectually Disabled".  At all times relevant to these proceedings, Student, by reason of his age, intellectual disability, communication deficits, and related disabilities, was not capable of making informed choices about engaging in sexual activity, was incapable of appreciating the risks associated of such activity, and was incapable of taking appropriate action to protect himself in the face of unwanted and inappropriate sexual advances from an adult.

2.   Mr. and Mrs. Robert Doe, the Student's natural parents and next friends ("Parents"), bring this lawsuit as representatives and natural guardians of John Doe for compensatory and punitive damages, and injunctive relief.  Mr. and Mrs. Doe also bring this lawsuit on their own behalf for the reimbursement for expenses incurred as a result of Defendants' wrongful and illegal conduct.

3.   Defendant Darien Board of Education ("Board") is responsible under Connecticut law, pursuant to Chapter 170 of the Connecticut General Statutes, to provide special education and related services to students it determines are eligible for services under the IDEIA.

4.   Defendant Town of Darien ("Town") is a municipality established pursuant to Connecticut law.

5.      At all times relevant, Defendant Zachary Hasak was an employee of the Board and of the Town, and beginning on or about January 2008 and continuing during the 2008-2009 and 2009-2010 school years, when the student was between eleven and twelve years old, Hasak was assigned the responsibility of providing one-on-one direct paraprofessional supervision of the Student.  Defendant Hasak is sued in his individual capacity.

6.      At all times relevant, Defendant Robin Pavia, Hasak's aunt, was the Director of Special Education and Student Services of the Darien Public Schools.  Defendant Pavia is sued in her individual capacity.

7.      At all times relevant, Defendant Melissa Bellino was an employee of the Board.  She was also the Student's special education teacher at the Tokeneke Elementary School during the 2007-2008 school year as well as the 2008-2009 school year and part of the 2009-2010 school year. Ms. Bellino is sued in her individual capacity.

8.      During the 2007-2008, 2008-2009 and 2009-2010 school years, Donald Fiftal was the Superintendent of the Darien Public Schools.

9.      At all times relevant, Stephen Falcone was the Assistant Superintendent or Superintendent of the Darien Public Schools. He became the Superintendent of Schools on or about June 2010.

10.     At all times relevant, Mary Lee Fisher was the Principal of the Tokeneke Elementary School.

11.     At all times relevant, Nicole Ruospo was a special education teacher in the Darien Middle School.

12.     At all times relevant, Marc Marin was an Assistant Principal at the Middlesex Middle School in Darien.

13.     At all times relevant, Carleen Wood was an Assistant Director of Special Education at the Middlesex Middle School and High School in Darien.

14.     During the 2007-2008, 2008-2009 and 2009-2010 school years, Defendant Andrea Cunha was the school psychologist at Tokeneke Elementary School and was responsible for implementing portions of the Student's Individual Education Plan ("IEP") and providing counseling to the Student.  Ms. Cunha is sued in her individual capacity.

15.     At all times relevant Defendant Laura Conte was an Assistant Director of Special Education for Elementary Schools in Darien, Connecticut.  Defendant Conte is sued in her individual capacity.

16.     At all times relevant, John Woodring was a regular education teacher in the Tokeneke Elementary School during the 2008-2009 and 2009-2010 school years.

IV.   <u>FACTS</u>

17.     During the 2007-2008, 2008-2009 and 2009-2010 school years, the Student attended Tokeneke Elementary School, a public school in Darien, Connecticut.

18.     The Student's IEPs for the 2007-2008, 2008-2009 and 2009-2010 school years required Defendant Board to provide a one-on-one paraprofessional to the Student throughout the school day.

19.     On or about January 2008, Defendant Pavia and Mr. Fiftal hired Defendant Hasak to work as the Student's paraprofessional. Hasak was then ostensibly supervised by the Student's special education teacher, Defendants Bellino, and Pavia and also by Ms. Fisher.

20.     On information and belief, Defendant Pavia and Mr. Fiftal hired Defendant Hasak, Pavia's nephew, without adequately reviewing and vetting his background or experience.  His hiring was based in substantial part, if not completely, on Pavia's personal family connections

with Hasak. On information and belief, Defendant Hasak was not a certified teacher or special education teacher and was not qualified to provide academic instruction to the Student.

21.     According to the Student's educational plans, the Student was to receive a full day of academic instruction from qualified regular or special education teachers.  Defendant Hasak was not the Student's teacher, and he was not supposed to be left alone with the Student for any appreciable length of time without direct supervision from a certified teacher or special education teacher.

22.     Nonetheless, on many occasions, up to and including October 14, 2009, Defendant Hasak took the Student to an unoccupied classroom in Tokeneke Elementary School, even though no instruction by certified personnel was necessarily planned during those times.

23.     On one or more occasions prior to October 15, 2009, Mr. Woodring observed Defendant Hasak taking the Student into an unoccupied classroom and did not report it.

24.     On one or more occasions up to and including October 15, 2009, Defendant Hasak took the Student into an empty room.  While in the empty classroom, alone with the Student, Defendant Hasak exposed himself sexually to the Student, made sexual advances toward the Student and encouraged the Student to engage in sexual activity with him.

25.     The Student refused to engage in sexual activity, as requested by Defendant Hasak. Hasak threatened to hurt the Student if he did not comply and used physical force to make him comply.  Defendant Hasak then told the Student not to tell anyone that he had propositioned and sexually assaulted the Student and threatened to hurt the Student if he told anyone about his inappropriate sexual conduct toward the Student.

26.     The Student was traumatized by Defendant Hasak's conduct and was afraid of Hasak.

27.     Following one or more incidents in which Defendant Hasak attempted to engage in sexual activity with the Student, the Student reported to the school staff that Defendant Hasak was trying to engage in sexual activity with him.

28.     Due to the nature and severity of the Student's cognitive and communicative disabilities, he was unable to prevent Hasak from pursuing sexual advances against him and/or request the help needed to extricate himself from Hasak's abusive conduct.

29.     On information and belief, school staff, including Defendants Bellino, Conte and Cunha, were aware of the Student's complaints about Hasak's abusive conduct but dismissed them as being not credible and they did not report it to anyone within the school system with authority to take corrective action.  In fact, the Student was told not to report Hasak's conduct to anyone.  As a result, the Student did not report Hasak's conduct to anyone else at that time.

30.     On information and belief, Defendants Bellino, Conte and/or Cunha did not report the Student's report of sexual abuse by Hasak as required by the Board's Policy and State statute because they disbelieved and discounted the Student's report of abuse because of the extent and nature of his disabilities and/or because they had not received adequate training on reporting and responding to allegations of abuse and neglect, sex discrimination and sexual harassment.

31.     Defendants Conte, Cunha and Bellino and also Mr. Woodring did not report the fact that Defendant Hasak was spending extensive time alone with the Student in Room 213 because they had not received adequate training from Defendant Board and/or Defendant Pavia, nor from Ms. Fisher, Dr. Falcone and Mr. Fiftal.

32.     On the morning of October 15, 2009, before school, the Student told his father that Defendant Hasak exposed himself to the Student, was trying to have sexual contact with him in school, and that Mr. Hasak engaged in inappropriate sexual contact with him.  He then told his

6

mother the same thing.

33.     Mr. and Mrs. Robert Doe immediately reported their son's complaints of Defendant's Hasak's sexual abuse to the Independent Consultant assigned to the Student's program, Eileen Luddy, Ph.D., at approximately 8:00 a.m., and later reported the abuse to the Principal of the Tokeneke Elementary School, Mary Lee Fisher, and the Assistant Superintendent of Schools, Dr. Stephen Falcone. Immediately after hearing from the Parents, Dr. Luddy advised Ms. Fisher that the Student reported that he had been sexually abused by Hasak, advised Fisher to inform the Superintendent of the allegation, and to immediately remove the Student from Hasak's presence.  Because the Superintendent was not in the school, Dr. Falcone was informed of the complaint. Dr. Falcone immediately advised Defendant Pavia of the complaint. Despite this alarming report, the Student remained under Hasak's supervision for several hours after Ms. Fisher and Dr. Falcone had received this information from Dr. Luddy.

34.     Dr. Falcone reported the alleged abuse to DCF on October 15, 2009 after Dr. Luddy advised them to do so.  Dr. Falcone then insisted on conducting an interview of the Student before DCF or the Darien Police could begin their investigations. Dr. Falcone promised the Parents that he would videotape the interview if the Parents would consent to the interview.  The Parents consented to the interview, based on that assurance.  The interview was not videotaped, however.  After the interview, school employees assigned to conduct the interview told Dr. Falcone, Dr. Luddy and the Parents that they believed the Student's assertions that he had been abused by Hasak. Defendant Hasak was put on paid administrative leave.  Since October 15, 2009, the Parents have repeatedly requested a copy of the Board's investigation report and a description of the facts and circumstances uncovered in the Board's investigation. The Board refused all requests for a copy of its investigatory report and any other information relating to its

investigation, until this lawsuit was filed.

35.   As a result of Defendants' failure to take the Student's complaints of abuse seriously, and take appropriate action in response to the Student's complaints, the Student continued to attend school with Defendant Hasak serving as his paraprofessional.  Student was traumatized by his continuing exposure to and interaction with Defendant Hasak even after the Student reported Hasak's inappropriate sexual advances.

36.   On October 15, 2009, the Parents filed a complaint with the Darien Police Department alleging that their son had been sexually abused in school.

37.   On October 15, 2009, the Defendant Board filed a complaint with DCF stating that the Student's Parents and/or Student alleged that the Student had been neglected and abused by Defendant Hasak, an employee of Defendant Board.

38.    On or about October 15, 2009, the Darien Police Department, pursuant to their protocol for handling sexual abuse cases involving children or students with disabilities, referred the Student to the Child Guidance Center of Southern Connecticut ("Child Guidance Center") for a forensic interview.

39.   The forensic interview was conducted on October 21, 2009 by professionals at the Child Guidance Center.  It was attended by the independent consultant, a representative of the Child Guidance Center, representatives of the Board, a representative of DCF and representatives of the Darien Police Department. One of the Parents was allowed to be present for part of the interview.

40.   On information and belief, the videotaped interview was conducted by the Child Guidance Center according to accepted professional standards and resulted in an opinion by the Child Guidance Center that the Student had been sexually assaulted by Hasak.  The Parents

requested, but were not given, a copy of the written findings of the forensic interview or the video tape of that interview because it was deemed by the Child Guidance Center to be the property of the Darien Police Department.

41.    The DCF investigation commenced on October 15, 2009.  DCF requested an interview with Defendant Hasak, but he refused to participate in the investigation.  On November 23, 2009, DCF found probable cause that the Student had been abused by Hasak based in substantial part on DCF's participation in the forensic interview conducted by the Child Guidance Center.  On information and belief, DCF's finding that the Student had been sexually abused by Hasak was entered on the registry of the DCF Commissioner's findings of abuse and neglect pursuant to Connecticut General Statutes §§ 17a-101g(d).  At no time, however, were the Student's Parents notified in writing of the facts and circumstances that led to DCF's finding of abuse.

42.    Defendant Hasak asked DCF to revise its abuse finding on December  22, 2009.  The Parents requested permission to participate in any DCF proceedings initiated as a result of Defendant Hasak's request for revision.  The Parents were advised by Attorney Mark Feller, a DCF attorney, on January 29, 2010, that the Parents could not participate and it was impossible for DCF to reverse its finding of abuse without either the child recanting sexual abuse allegations or a hearing. The Parents advised DCF in writing that they wished to participate in the hearing, on the advice of Attorney Feller.

43.    However, on or about February 9, 2010, DCF reversed its finding of abuse without a hearing based on an internal review conducted by Ingrid Aarons, Program Manager of the Norwalk Office of DCF.  On information and belief, this reversal was based on an unsolicited report provided over the telephone by the State Attorney's Office that the State Attorney decided

not to prosecute Hasak for sexually abusing the Student because the State's Attorney believed the Student might not be able to testify due to the severity of his disability.

44. Despite their request, the Parents and Student have not been advised as to what information was used by Aarons to reverse DCF's substantiation of abuse, and they have not been afforded the opportunity for a hearing or other appropriate opportunity to participate in DCF proceedings to rebut unfounded assumptions about the Plaintiff Student's lack of credibility.

45. DCF policy and its regulations permit only the perpetrator of abuse to request a hearing. Except as provided by Conn. Gen. Stat. § 17a-103b, parents and the abused child are not informed as to whether their children have been abused or the facts and circumstances surrounding that abuse that would enable the Parents to obtain treatment for the child and or protect him/her from further harm.

46. In May 2010, following DCF's decision to reverse its substantiation of abuse, based on internal review by Defendant Board, Defendant Hasak was restored to his position as a full time paraprofessional in the Darien Public Schools. On information and belief, as a result of DCF's internal review, Hasak's name was removed from the DCF abuse registry at that time, DCF took no action to require the Board to change its policies and procedures, and DCF provided no protective services to the Student or training to the Board's staff.

47. The decision of Ingrid Aarons of DCF to reverse DCF's substantiation of abuse and remove Hasak's name from the DCF's abuse registry was based on incorrect assumptions about the credibility of the Student. Her assumption that the decision of the State's Attorney's Office not to prosecute Defendant Hasak was entitled to more weight than the statements of a severely disabled child, without meeting the Student or thoroughly evaluating what the Student had to say, was inappropriate.

48.    On or after October 15, 2009, Defendant Pavia along with Dr. Falcone and Mr Fiftal instructed their subordinates to not engage in conversations with the Student when he attempted to discuss the sexual abuse.  Instead, the Student was asked to wait and discuss the abuse at a later time with the school psychologist, Defendant Cunha.  The Board's failure to acknowledge the Student's fears and anxiety about the abuse exacerbated the emotional harm to the Student.

49.    On January 4, 2010, the Parents wrote a complaint letter to the State of Connecticut Department of Education, pursuant to 20 U.S.C. § 1415(b)(6), requesting an administrative hearing to challenge the appropriateness of the Student's IEP in light of changes made in his program following his sexual abuse by a school paraprofessional.

50.    As a result of a mediation process, convened pursuant to 20 U.S.C. § 1415(e) in lieu of a Resolution PPT under 20 U.S.C. § 1415(f)(1)(B), the Parents and Board entered into a formal Mediation Agreement.  The parties agreed that, by signing the Mediation Agreement, the Parents and Student were not waiving their right to sue for damages for personal injuries suffered through the alleged abuse by Hasak and that the Parents achieved through the mediation agreement all of the relief they could have achieved had they gone through a full hearing.

51.    Requesting another due process hearing to resolve the issues raised in this complaint would be futile in that: 1) the Student has already obtained all the relief he could have obtained through a due process hearing; 2) the Parents and student are of the opinion that the Student's IEP does not deprive him of a free appropriate public education; 3) due process hearing officers do not have the authority under Connecticut law to award the relief sought from Defendant Board here – money damages; 4) under Connecticut law, due process hearing officers do not have jurisdiction to decide claims made under the ADA or § 504 unless the claims are so intertwined

with a claim that the Board has failed to provide FAPE that they cannot be resolved separately. Due process hearing officers would therefore have no jurisdiction over Plaintiffs' claims that the ADA and § 504 have been violated because a violation of FAPE does not exist.

52.   On or about September 1, 2010, the Student was transferred to Darien's Middlesex Middle School.

V.   CAUSES OF ACTION:

 COUNT I:  Liability of the Board for Violating the ADA and § 504

53.   The ADA prohibits discrimination on the basis of disability by public entities.  Title II of the ADA extends this prohibition of discrimination to include all services, programs, and activities provided or made available by state and local governments or any of their instrumentalities or agencies, regardless of their receipt of federal financial assistance.

54.   Defendant Board is a recipient of federal funds and is a "public entity" under 28 C.F.R. § 35.104.

55.   A person with a disability is defined within the ADA as having: "a physical or mental impairment that substantially limits one or more of the major life activities of such individual: a record of such impairment; or being regarded as having such and impairment."  28 C.F.R. § 35.104.

56.   A person with a disability is defined within Section 504 as having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; or being regarded as having such impairment."  34 C.F.R. § 104.3.

57.   The Student has a disability under the ADA and § 504 in that he has been diagnosed with Down Syndrome and categorized by his Planning and Placement Team as having an "Intellectual Disability".  He has severe cognitive and physical impairments that affect his ability

to communicate, interact with other students, and participate in educational programs unless substantial supplementary aids and services and modifications to the curriculum are provided.

58.    Student is a "qualified individual with a disability" in that he has a disability that, with or without reasonable modifications to rules, policies, or practices or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of educational services or the participation in the educational services provided by the Board.

59.    Under Board policy and/or practice Defendants Bellino, Conte and Pavia, along with Ms. Fisher, as Defendant Hasak's supervisors, had a duty to supervise Hasak and had the power to take action that would end the abuse of Student by Defendant Hasak.  Defendants Conte and Pavia, along with Ms. Fisher, as Defendant Bellino's supervisors, had the power to take action that would have ended the Hasak abuse, but then failed to exercise their power to protect the Student.

60.    By failing to take seriously the report of the Student that he was being abused and take appropriate action to report and/or stop the abuse simply because the Student has a severe disability, Defendant Board, through its employees Bellino, Conte, Cunha, Fisher and Defendant Pavia, discriminated against the Student due to the severity and nature of his disability and interfered with his right to receive educational services in a safe environment free of sexual harassment under Title IX in violation of the ADA and § 504.  Employees of the Board exhibited bad faith and gross misjudgment by not accepting and acting on the Student's complaint, taking appropriate action to investigate and stop the abuse, and by failing to provide the Student sufficient skills to protect himself in the event of a sexual assault.

61.    Further, Dr. Falcone's decision to accord little or no weight to the Student's assertions of sexual abuse when they were reported and during Dr. Falcone's subsequent

investigation, as well Dr. Falcone's decision to accord little weight to the results of the forensic interview conducted by the Child Guidance Center, constituted discrimination based on the severity of the Plaintiff Student's disabilities. On information and belief, the lack of training, supervision and adequate policy development were important factors contributing to Defendant's discriminatory acts.

62.    As a result of the discrimination of Defendant Board's employees, Defendant Hasak's suspension was revoked and he was returned as a full time paraprofessional in the Darien Public Schools. As a result, the Plaintiff continued to suffer trauma by being exposed to Defendant after reporting the abuse. Further, as a consequence, the Student has suffered permanent emotional harm, including PTSD and will require treatment and enhanced supervision for the rest of his life.

63.    Employees of Defendant Board exhibited bad faith and gross misjudgment by not immediately investigating the complaints of sexual abuse, by ignoring the Student's assertions that he was being sexually abused, by not taking action to protect him, by not acknowledging and responding to the facts behind the PTSD from the abuse, and by not notifying the Parents of the results of Defendant Board's investigation and the facts and circumstances of the abuse.

64.    As a result of Defendants' bad faith and gross misjudgment, the Student has suffered physical, emotional and psychological trauma, pain and suffering, including, but not limited to, PTSD. Many of these injuries are permanent and cannot be remedied fully by treatment and therapy.

65.    As a further result of the bad faith and gross misjudgment of employees of the Board, the Student will continue to suffer emotional trauma and anxiety and will require therapy, counseling and medical care for the rest of his  life. Student is likely to be subjected to the same

discriminatory actions in the future given the inadequate training of Board employees, the deficient Board policies and practices and the fact that the Student has difficulty reporting abuse given the severity of his disabilities.

66.    As a further consequence of Defendants' bad faith and gross misjudgment, Plaintiffs Mr. and Mrs. Robert Doe have incurred expenses for the Student's medical care, psychiatric care and treatment.

COUNT II: Violation of Title IX by Defendant Board

67.    Defendant Board is a recipient of federal funds under Title IX.

68.    Defendant Zachary Hasak engaged in inappropriate sexual advances toward and sexual harassment of the Plaintiff Student.

69.    On information and belief Defendants Bellino, Cunha, and Conte were aware of the inappropriate sexual advances and sexual harassment of the Student and that such conduct placed the Student at risk. Despite having knowledge of Defendant Hasak's inappropriate actions and the authority as his supervisors to take corrective action, Defendants failed to take action to stop this inappropriate conduct. Indeed, on information and belief, Defendant Bellino instructed the Student not to tell anyone about his complaint thereby discouraging him from making any complaints with any other school personnel.

70.    The harassment by Defendant Hasak has interfered with the Student's ability to attend school and fully participate in school activities.

71.    This deliberate indifference to the inappropriate, illegal, and unwelcome sexual advances of Defendant Hasak by Darien and these school employees created an intimidating, hostile, offensive and abusive school environment in violation of Title IX.

72.    As a result of the deliberate indifference of these employees of Defendant Board,

the Student continued to be supervised while in school by a paraprofessional who had abused, threatened and intimidated him.  Such continued exposure to Defendant Hasak imposed further emotional and psychological trauma on the Student.

73.    As a result of Defendants' deliberate indifference, the Student has suffered physical, emotional and psychological trauma, pain and suffering, including, but not limited to PTSD, which has affected his progress in school. Many of these injuries are permanent and cannot be remedied fully by treatment and therapy.

74.    As a further result of the deliberate indifference of employees of the Board, the Student will continue to suffer emotional trauma, depression and anxiety and will require therapy, counseling and medical care for the rest of his life.

75.    As a further consequence of Defendants' deliberate indifference, Plaintiffs Mr. and Mrs. John Doe have incurred expenses for medical care, psychiatric care and treatment.

COUNT III: Violation of Due Process (Against The Board, Hasak, Bellino, Conte, Cunha, and Pavia)

76.    Defendants, the Board, Hasak, and Pavia had a duty under State and Federal law to provide the Student with adequate supervision and instruction in a safe environment.

77.    At all times relevant, the Student was completely dependent upon Defendant Board and its employees to provide him with such supervision and training as to protect him from harm. Moreover, Connecticut's compulsory attendance laws created a special relationship between the Student and Defendants.

78.    Each of these Defendants had actual or constructive knowledge that the Student was not adequately supervised and had been abused, and were in a position to take such action as necessary to prevent a sexual assault from occurring and/or limit the harm from the abuse.

79.    Had these Defendants provided appropriate supervision, provided instruction to the

Student on how to protect himself, taken appropriate action once the abuse was reported, and/or not assaulted and threatened him, the Student would not have suffered the injuries complained of herein, and would not have been traumatized to such a significant extent.

80.   Defendants' failure to provide necessary staff training on how to evaluate and handle a complaint of abuse reported by a severely disabled student, provide adequate supervision and take the minimum steps necessary to protect Student from harm so substantially deviated from professional judgment as to indicate that professional judgment was not exercised in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

81.   Defendants' failure to take action to provide proper training on how to evaluate and respond to a complaint of abuse reported by a severely disabled student, to provide adequate supervision and to take the steps necessary to protect the Student constituted deliberate indifference to the safety of the Student.

82.   The sexual assaults on Student by Defendant Hasak constituted conscious-shocking behavior that inflicted physical and permanent emotional and psychological harm on the Student. Such actions by Defendant Hasak constituted deliberate indifference toward the health and safety of the Student.

83.   The Board's policy and practice of failing to inform parents that their children are alleged to have been abused and the circumstances of any such alleged abuse violates the parents' right to sufficient information to secure adequate treatment for their child and protect that child from further abuse.

84.   As a result of Defendants' violation of the Student's due process rights, the Student suffered severe and permanent emotional and psychological trauma, pain and suffering, including

PTSD.

85.     As a further consequence of Defendants' violation of the Student's due process rights, the Student will continue to suffer emotional trauma and anxiety over this assault and will require counseling, therapy, medical care, and additional supervision and care for the rest of his life.

86.     As a further consequence of this conduct, the Plaintiffs Mr. and Mrs. Doe have incurred and will continue to incur expenses for medical treatment, psychiatric care and counseling.

COUNT IV: Violation of Procedural Due Process (Against Defendant Darien Board of Education)

87.     Student was entitled to be reasonably safe from sexual abuse while attending school under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Connecticut General Statutes § 17a-101i(b).

88.     Defendant Board, along with Dr. Falcone and Mr. Fiftal, ended Defendant Hasak's suspension and returned him to work as a full time employee in the Darien Public Schools without giving appropriate consideration to the Student's report that he had been sexually abused, and without giving the Parents an opportunity to participate in the proceedings that led to the determination that Hasak had not abused the Plaintiff Student.  At no time were the results of the Board's investigation fully disclosed to the Plaintiffs.

89.     The procedures used by Defendant Board deprived the Parents of sufficient information about the alleged abuse and about the alleged abusers of their child necessary to obtain effective treatment for their child and protect him from further abuse.

COUNT V: Assault and Battery (Against Defendant Hasak)

90.     Defendant Hasak abused the Student sexually, emotionally, and/or physically.  Due

to his status as an authority figure, and due to the Student's age and severe cognitive and communication disabilities, the Student was unable to protect himself from and unable to consent to such conduct.

91.    Defendant Hasak exposed himself to and engaged in sexual activity with Plaintiff Student, knowing that he was a minor, had severe disabilities and was unable to consent to such activity.

92.    Defendant Hasak engaged in sexual activity with the Student using force and/or the threat of force.

93.    These assaults, batteries and abuse on the Student were substantial factors in causing the Student to incur severe and permanent emotional and psychological harm, including PTSD.

94.    As a result of Defendants' assaults and batteries, Student suffered severe and permanent emotional and psychological trauma, pain and suffering, including PTSD.

95.    As a further consequence of these assaults and batteries, the Student will continue to suffer emotional trauma and anxiety over this assault and will require counseling, therapy, medical care, and additional supervision and care for the rest of his life.

96.    As a further consequence of this conduct, the Plaintiffs Mr. and Mrs. Doe have incurred and will continue to incur expenses, medical treatment, psychiatric care and counseling.

COUNT VI: Reckless and Wanton Conduct (Against Defendant Hasak)

97.    Defendant Hasak abused the Student sexually, emotionally, and/or physically. Due to his age and severe cognitive and communication disabilities, the Student was unable to protect himself from and unable to consent to such conduct.

98.    Defendant Hasak engaged in sexual activity with Student knowing that he was a

minor, had severe disabilities and was unable to consent to such activity.

99.     Defendant Hasak engaged in sexual activity with the Student using force and/or the threat of force.

100.     By taking a minor child with severe cognitive impairments to an unoccupied classroom at Tokeneke Elementary School where the Student could not be supervised by teachers, and by exposing himself to the Student and engaging in sexual activity with him, Defendant Hasak engaged in conduct that was in reckless and wanton disregard of Student's rights. Defendant Hasak knew or should have known that engaging in sexual activity with an intellectually disabled minor child would cause serious emotional and physical trauma.

101.     As a result of Defendant Hasak's assaults and batteries, Student suffered severe and permanent emotional and psychological trauma, pain and suffering, including PTSD.

102.     As a further consequence of Defendant's assaults and batteries, the Student will continue to suffer emotional trauma and anxiety over these assaults and will require counseling, therapy, medical care, and additional supervision and care for the rest of his life.

103.     As a further consequence of this conduct of Defendants, the Plaintiffs Mr. and Mrs. Doe have incurred and will continue to incur expenses for medical care, psychiatric care and counseling.

COUNT VII: Negligence (Against Defendants The Board, Hasak, Bellino, Conte, Cunha, and Pavia)

104.     These Defendants had a duty under state and federal law to provide Student with adequate supervision and a safe environment within which his educational program would be delivered.

105.     These Defendants breached this duty in one or more of the following respects:

    A. By failing to establish and follow customs or procedures that ensured adequate

adult supervision was provided to the Student at all times;

B.  By failing to provide Student with adequate supervision under the circumstances;

C.  By failing to take appropriate action after the Student reported that Defendant Hasak was making improper sexual advances against him;

D.  By failing to accept and investigate the Students' allegation that Defendant Hasak was making improper sexual advances against him;

E.  By failing to report the Student's complaint that Defendant Hasak was making improper sexual advances as required by the Board's Policies on Abuse and Neglect and Sexual Harassment;

F.  By failing to provide closer supervision to the Student after he reported that Defendant Hasak was making improper sexual advances;

G.  By failing to take action to prevent further abuse from occurring;

H.  Defendant Hasak departed from his duty to provide safe and effective care to the Student by engaging in conduct that was injurious and harmful to the Plaintiff Student;

I.  By ignoring the fact that the Student acquired PTSD from Hasak's abuse and deflecting the Student's attempts to talk about the abuse; and

J.  By failing to provide the Student adequate instruction on how to protect himself from abuse.

106.    These breaches of duty were taken or not taken by these Defendants knowing that the consequences of their actions would be that injury would occur to the Student in an empty room of the Tokeneke Elementary School through the actions of Defendant Hasak .

106.    These breaches of duty were substantial factors in causing the injuries to Student as set forth in this complaint.

107.    As a result of Defendants' negligence, Student suffered severe and permanent emotional and psychological trauma, pain and suffering, including PTSD.

108.    As a further consequence of Defendants' negligence, the Student will continue to suffer emotional trauma and anxiety over these assaults and will require counseling, therapy, medical treatment, and additional supervision and care for the rest of his life.

109.    As a further consequence of this conduct, the Plaintiffs Mr. and Mrs. Doe have incurred and will continue to incur expenses for medical treatment, psychiatric care and counseling.

COUNT VIII: Statutory Liability (Against Defendant Town of Darien)

119.Connecticut General Statutes § 7-465 provides that Defendant Town  must pay on behalf of any employee all sums which such employee becomes obligated to pay by reason of the liability imposed on such employee by law or damages awarded for infringement of any person's civil rights or for physical damages to person or property if the employee was acting in the performance of his duties and within the scope of employment and such damages were not the result of any willful or wanton act of such employee.

120.    The damages caused to Student as alleged herein were caused by the individual Defendants who were acting within the performance of their duties and within the scope of their employment and such damages were not the result of any willful act of such employee.

121.    Defendant Town is therefore responsible to pay any and all damages found to be caused by the conduct of these Defendants.

COUNT IX:  Statutory Liability of Defendant Darien Board of Education

122.    Connecticut General Statutes § 10-235 provides that Defendant Board must hold harmless any teacher or any member of the supervisory or administrative staff from any financial loss or expense arising out of any claim

123.    The damages caused to the Student as alleged herein were caused by employees of Defendant Board of Education who were acting within the performance of their duties and within the scope of employment and/or by Defendant Darien Board of Education and such damages are not the result of any willful acts.

124.    Defendant Darien Board of Education is therefore responsible to pay any and all damages found to be caused by the conduct of Defendants.

VI.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment against each of Defendants and claim in their prayer for relief as follows:

1.    Compensatory and punitive damages under the Civil Rights Act of 1871,

42 U.S.C. § 1983, and against all Defendants for deprivation of rights afforded the Plaintiff pursuant to the Fourteenth Amendment to the United States Constitution, Title IX, the ADA, § 504 of the Rehabilitation Act and the Plaintiffs' State negligence claims.

2.    Compensatory and punitive damages for assault and battery as to Defendant Hasak only.

3.    Compensatory and punitive damages for reckless and wanton conduct of Defendants.

4.    Costs, expert fees and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, the ADA, 42 U.S.C. § 12205; § 504 of the Rehabilitation Act, 29 U.S.C. §794a(b) and Title IX.

5.    Compensatory damages for the retaliation against the Plaintiffs by Defendant Board

and its employees.

6.    Injunctive relief requiring Defendant Board to inform parents of any allegations of abuse involving their children, the disposition of any such abuse allegations, the facts and circumstances surrounding the alleged abuse, and the identity of the alleged abuser.

7.    Injunctive relief requiring Defendant Board to develop an appropriate policy and process to investigate allegations of abuse involving school children that investigates abuse allegations fully but does not discriminate against children with disabilities and does not compromise the investigations of the State's Attorney's Office or DCF.

8.    Injunctive relief requiring Defendant Board to develop training programs that adequately prepare school staff and the students to report, investigate and appropriately respond to allegations of abuse or neglect made by disabled students.

9.    Such other relief as the Court deems just.

December 15, 2014                    JOHN DOE, by and through his Parents and next
                                     friends, Mr. and Mrs. Robert Doe; and
                                     MR. ROBERT DOE; MRS. ROBERT DOE

                                     By: _____/s/_____
                                     Tracey Spencer Walsh, Esq.
                                     Mayerson and Associates
                                     330 West 38th Street, Room 600
                                     New York, NY 10018
                                     Phone: 212-265-7200
                                     Fax: 212-265-1735
                                     Email: Tracey@mayerslaw.com

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that on December 15, 2014 the foregoing Fourth Amended Complaint was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/_____

Tracey Spencer Walsh, Esq.