UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, by and through his Parents and next friends, Mr. & Mrs. Robert Doe; and MR. ROBERT DOE; MRS. ROBERT DOE,<br>    *Plaintiffs*,<br>    *v.*<br>DARIEN BOARD OF EDUCATION, ZACHARY HASAK, MELISSA BELLINO, and LAURA CONTE,<br>    *Defendants*. | Civil No. 3:11cv1581 (JBA)<br><br>November 24, 2015 |

**RULING ON DEFENDANT HASAK'S RULE 59 MOTIONS AND PLAINTIFFS' MOTION FOR SECURITY FOR COSTS**

Defendant Hasak moves, pursuant to Federal Rule of Civil Procedure 59, for a new trial, or in the alternative, an amended judgment, based on two grounds: (1) the jury's award of $90,000 in past economic damages [Doc. # 463]; and (2) the Court's response to a jury question regarding the scope of John Doe's substantive due process rights [Doc. # 464]. Plaintiffs move [Doc. # 488] for an order requiring Mr. Hasak to post a bond that covers the judgment as well as their accrued and prospective attorneys' fees and costs. For the following reasons, Defendant Hasak's first motion [Doc. # 463] is granted in part and his second motion [Doc. # 464] is denied. Plaintiffs' motion [Doc. # 488] is granted in part and denied in part.

**I.    Background**

Familiarity with the background of this case is presumed. Briefly, Plaintiffs alleged that Defendant Zachary Hasak sexually abused John Doe, a then-twelve year old boy with Down Syndrome, while Mr. Hasak was employed by the Darien school system at Tokeneke Elementary School as John's one-on-one paraprofessional aide. After eight-

days of evidence, the jury began its deliberations. On August 3, 2015, during those deliberations, the jury sent a note to the Court seeking clarification of the jury charge. Specifically, the jury asked: "The verdict form says #1 have Does proved that Mr. Hasak sexually abused John? However, Count 5, 6, and 7 don't seem to talk about sexual abuse. Count 5 talks about assault and battery, but that [pre]supposes that there was a 'touch' involved. What if we believe it's just exposure? Which count would that fall under, if at all?"

After discussion with counsel, the Court responded with the following supplemental instruction:

> Count 5, in which plaintiffs have claimed collectively assault and battery, does not differentiate between these two terms in this case. Assault and battery differ insofar as assault does not require contact; battery does. Assault is intentional conduct which is intentionally done for the purpose of putting another person in apprehension of an immediate harmful or offensive contact or is done with the knowledge that that apprehension is substantially certain to result.
>
> The allegation of intentional exposure of genitalia by Mr. Hasak to John is within the meaning of "sexual abuse" as used in this case. Whether you find sexual abuse or not is entirely up to you and the fact that I have attempted to add clarification in light of your question is in no way intended to direct your deliberations or influence your verdict.

The following day, the jury returned its verdict [Doc. # 460], finding Mr. Hasak liable on Count III for violations of John's substantive due process rights, and not liable on all other counts. The jury awarded Plaintiffs $90,000 in past economic damages and $10,000 in non-economic damages. The verdict form did not include any factual findings other than a finding that Mr. Hasak had "sexually abused" John and that John had been proximately harmed by that abuse.

## II. Discussion[1]

### A. Past Economic Damages

Defendant Hasak contends that he is entitled to "a new trial as to past economic damages only, because the amount awarded for . . . the cost of treatment provided by Dr. Cornelia Gallo would provide the plaintiff with a windfall recovery, in so far [sic] as Dr. Gallo's medical bills have already been paid by the Darien Board of Education pursuant to [a] mediation agreement." (First Mot. for New Trial [Doc. # 463] at 1.) Plaintiffs do not dispute that the Board of Education paid Dr. Gallo's bills, but they "urge that reducing the judgment by $90,000 would only unjustly enrich defendant Hasak." (Opp'n [Doc. # 472] at 9.)

As discussed by the parties in their supplemental briefs,[2] this issue is determined by application of the collateral source rule, which federal courts apply in § 1983 actions.

---

[1] Under Federal Rule of Civil Procedure 59(a)(1)(A), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." ). "A new trial must be granted if the court determines that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Santa Maria v. Metro–North Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996). The grant of a new trial is also appropriate when, "in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998).

[2] At the status conference held on the record on October 21, 2015, the Court directed the parties to file supplemental briefs by November 2, 2015 and replies if necessary on November 12, 2015. Both parties filed supplemental briefs on November 2. Defendant filed his reply on November 11 and Plaintiffs filed their reply on November 12. Defendant then filed an additional brief on November 12 which he styled as a "sur-reply." Plaintiffs object to this filing on the grounds that Defendant did not seek the

*See Gill v. Maciejewski*, 546 F.3d 557, 564–65 (8th Cir. 2008) (quoting *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 231–32 (1970))); *Hartnett v. Reiss S. S. Co.*, 421 F.2d 1011, 1016 n.3 (2d Cir. 1970) ("The general rule in the federal courts is that the collateral source rule is applied. . . ."). *But see Carswell v. Bay Cty.*, 854 F.2d 454, 458 (11th Cir. 1988) (upholding district court's application of state common law version of collateral source rule in § 1983 case without discussion of whether state or federal common law should be applied).

The collateral source rule "holds that the defendant's liability shall not be reduced merely because the plaintiff's net damages are reduced by payments received from" a wholly independent source. *Id.*; *see* Restatement (Second) of Torts § 920A(2) ("Payments made to or benefits conferred on the injured party from . . . sources [other than the tortfeasor or a person acting for him] are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."). "The rationale for the . . . rule is to prevent the defendant from receiving a windfall by avoiding liability for damages suffered by the plaintiff as a result of the defendant's conduct." *Henderson v. Peterson*, No. C 07-2838 (SBA) (PR), 2011 WL 2838169, at *4 (N.D. Cal. July 15, 2011).

"A 'collateral source' is usually defined as a payment that is independent of the defendant and one that the defendant played no part in creating." Jacob A. Stein, 2 *Stein on Personal Injury Damages* § 13.5 (3d ed. 2015). "Typically, the doctrine applies to such independent sources as insurance policies maintained by plaintiff or an innocent third

---

Court's permission to file this brief. Plaintiffs' Objection [Doc. # 493] is SUSTAINED. The Court has not considered Mr. Hasak's "sur-reply" in reaching this decision.

party, employment wages and benefits, gratuities, social security benefits, and welfare payments." *N. Atl. Fishing, Inc. v. Geremia*, 153 B.R. 607, 611 (D.R.I. 1993). Thus, for example, "where a doctor provide[s] medical services to his cousin, without charge, and the defendant ha[s] nothing to do with the doctor's provision of services, the treatment constitute[s] a collateral source. Similarly, when a husband buys life insurance, he has established a fund meant to protect his family from want, not to immunize the wrongdoer who causes his death. . . . Funds that are created because of the plaintiff's foresight or because his or her friends or relatives assisted him or her are of no benefit to the tortfeasor." *Stein on Personal Injury Damages* § 13.5.

However, a payment is not "collateral" if it is made "by any person in compensation of a claim for a harm for which others are liable as tortfeasors . . . whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment." Restatement (Second) of Torts § 885(3); *see Id*. § 920A(1) cmt. a ("[A] payment by another tortfeasor of an amount for which he is jointly liable with the defendant or even by one who is not actually liable to the plaintiff" "has the effect of reducing" the defendant's tort liability if the person making the payment "is seeking to extinguish or reduce the obligation."). Here, the Board of Education, although ultimately found not liable, agreed before judgment was entered against Mr. Hasak to pay Dr. Gallo's bills for treatment provided to John following the alleged abuse. (*See* Mediation Agreement [Doc. # 327-36] ¶ 1.) The Board's payment of Dr. Gallo's fees was not "collateral" within the meaning of the law; it was related to and not independent of Mr. Hasak's liability.

Therefore, the Court will reduce the judgment against Mr. Hasak to $10,000, covering only non-economic damages. A new trial on damages, however, is unnecessary.

## B. Substantive Due Process

Defendant Hasak next moves for a new trial "insofar as the court's answer to a jury question deprived Mr. Hasak of a fair trial by allowing the jury to reach a verdict that is contrary to law." (Second Mot. for New Trial [Doc. # 464] at 1.) Mr. Hasak contends that the Court erred in instructing the jury that "intentional exposure of genitalia by Mr. Hasak to John is within the meaning of 'sexual abuse'" because as a matter of law intentional exposure of genitalia by a teacher to a student does not suffice to make out a colorable violation of the child's substantive due process right to bodily integrity. (*Id.* at 6.)

The Second Circuit has recognized that the right to bodily integrity is a liberty interest protected by the Fourteenth Amendment, "'that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild,'" and that in this context, a school employee is a "state actor." *United States v. Giordano*, 442 F.3d 30, 47 (2d Cir. 2006) (quoting *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 451–52 (5th Cir. 1994)). The question then is what constitutes "sexual abuse." Relying in part on the Eighth Circuit's decision in *Haberthur v. City of Raymore, Mo.*, 119 F.3d 720, 723 (8th Cir. 1997), Defendant asserts that "the substantive due process right to bodily integrity requires that there be some type of 'sexual fondling and touching or other egregious sexual contact.'" However, as Plaintiffs note, *Haberthur* does not *require* contact; it merely states that

6

sexual fondling and touching *suffices* to make out a claim of violation of the right to bodily integrity.

In the context of interpreting and applying the Sentencing Guidelines, the Eighth Circuit, along with the Fourth and Eleventh Circuits has defined the term "sexual abuse of a minor" with reference to its "ordinary, contemporary, common meaning." *United States v. Sonnenberg*, 556 F.3d 667, 671 (8th Cir. 2009) (internal quotation marks omitted). As explained by the Eleventh Circuit in *United States v. Padilla-Reyes*, 247 F.3d 1158, 1163–64 (11th Cir. 2001), in rejecting the defendant's contention that the term "sexual abuse" is ambiguous "because it is not clear whether physical contact is a necessary element of the offense":

> the ordinary meaning of the phrase ["sexual abuse of a minor"] includes acts that involve physical contact between the perpetrator and the victim as well as acts that do not. An examination of the relevant definitions . . . reveals that "abuse" does not connote only physically injurious acts. Furthermore, the modifier "sexual" does not limit the phrase's scope to abuse of the physical variety. Rather than describing the form of the abuse as a "sexual" physical contact, we think the word "sexual" in the phrase "sexual abuse of a minor" indicates that the perpetrator's intent in committing the abuse is to seek libidinal gratification. In other words, the phrase "sexual abuse of a minor" means a perpetrator's physical or nonphysical misuse or maltreatment of a minor for a purpose associated with sexual gratification.
>
> This reading conforms with common usage, which often employs the term to describe nonphysical "sexual abuse," as well as comprehending the more technical usage employed by researchers in the field. The conclusion that "sexual abuse of a minor" is not limited to physical abuse also recognizes an invidious aspect of the offense: that the act, which may or may not involve physical contact by the perpetrator, usually results in psychological injury for the victim, regardless of whether any physical injury was incurred.

*Id.* (internal citations omitted); *see Sonnenberg*, 556 F.3d at 671 (adopting the Eleventh Circuit's definition); *United States v. Diaz-Ibarra*, 522 F.3d 343, 351–52 (4th Cir. 2008) (same).

In a similar vein, several federal courts have held that children in foster homes have "a substantive due process right to be free from unreasonable and unnecessary intrusions on both [their] physical *and emotional* well-being." *B.H. v. Johnson*, 715 F. Supp. 1387, 1395 (N.D. Ill. 1989) (emphasis added). As then Chief Judge Grady in the Northern District of Illinois reasoned:

> [This] conclusion is grounded in common sense: A child's physical and emotional well-being are equally important. Children are by their nature in a developmental phase of their lives and their exposure to traumatic experiences can have an indelible effect upon their emotional and psychological development and cause more lasting damage than many strictly physical injuries.

*Id.*; *see Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 675 (S.D.N.Y. 1996) *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) (same).

Although the Court acknowledges that there is some non-binding authority for the proposition that "conduct falling shy of sexual molestation or assault does not give rise to an actionable § 1983 substantive due process claim," *Gilliam v. USD No. 244 Sch. Dist.*, 397 F. Supp. 2d 1282, 1287–88 (D. Kan. 2005); *see also Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist.*, No. 19, 77 F.3d 1253, 1255–56 (10th Cir. 1996) ("There were no allegations, however, of sexual assault, molestation, or touching of any sort. We have found no case in a school context that held conduct falling shy of sexual molestation or assault constitutes constitutionally actionable sexual harassment."); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (holding that a

teacher's act of rubbing a student's stomach while he made suggestive remarks to her did not violate the student's right to bodily integrity and stating that it is inconceivable that a "single slap" could shock the conscience), it does not find this authority persuasive. Like the Seventh Circuit in *White v. Rochford*, 592 F.2d 381, 384 (7th Cir. 1979), this Court "see[s] no reason in either logic or experience to require . . . physical violence as a necessary prerequisite to suit under § 1983." *Id.* (internal quotation marks omitted); *see also Mendez Through Mendez v. Rutherford*, 655 F. Supp. 115, 118 (N.D. Ill. 1986) (rejecting argument that a claim for emotional distress is not cognizable under § 1983). Rather, the Court finds that as a matter of law, a child's substantive due process right to bodily integrity may be violated by a teacher's sexual abuse, even if that abuse does not involve physical contact with the child.

### C. Bond to Cover Attorneys' Fees

Plaintiffs seek an order requiring Mr. Hasak to post a bond pending his appeal that is large enough to cover the judgment against him as well as Plaintiffs' accrued and prospective attorneys' fees and costs. As a preliminary matter, because Mr. Hasak has not sought a stay pending appeal, Plaintiffs' request for a bond covering the judgment and accrued attorneys' fees is premature.

The same is not true of Plaintiffs' request for a bond covering prospective costs of Mr. Hasak's appeal. That motion is governed by Federal Rule of Appellate Procedure 7, which provides that a "district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." *See Adsani v. Miller*, 139 F.3d 67, 70 n.2 (2d Cir. 1998) (explaining that a supersedeas bond, covered by Rule 7 "is retrospective[,] covering sums related to the merits of the

underlying judgment (and stay of its execution), whereas a 'cost bond,'" governed by Rule 8, "is prospective, relating to the potential expenses of litigating an appeal.").

The Second Circuit has held that "costs," as used in FRAP Rule 7 are not limited to costs as defined by FRAP Rule 39.[3] *Id.* at 75. Rather, where, as here,[4] "a federal statute includes attorney's fees 'as part of the costs' which may be taxed upon appeal, the district court may factor those fees into its imposition of the bond for costs." *Id.* at 79.

Plaintiffs, relying on *Adsani*, contend that the Court should impose a bond requirement of $75,000 to $125,000 to cover their anticipated appellate costs and fees. (Pls.' Mot. for Bond [Doc. # 488] at 6.) Defendant Hasak opposes Plaintiffs' motion, arguing that *Adsani* is distinguishable because in *Adsani*, "the court ordered that the plaintiff post a bond to cover the awarded attorney's fees while her appeal was pending, pursuant to FRAP 7," whereas here, no attorneys' fees have been awarded yet. (Def.'s Opp'n to Bond [Doc. # 489] at 6.) Defendant Hasak misunderstands the facts of *Adsani*. While it is true that the court had already awarded retrospective attorneys' fees, the bond at issue in *Adsani* was a cost bond, which covered anticipated fees and costs of Adsani's appeal, not a supersedeas bond that covered retrospective fees and costs. *See Adsani*, 139 F.3d at 70 ("The district court granted [defendants'] motion [under Rule 7], requiring

---

[3] Rule 39 defines taxable costs of appeal to include costs of: "preparation and transmission of the record"; "the reporter's transcript, if needed to determine the appeal"; "premiums paid for a supersedeas bond or other bond to preserve rights pending appeal"; and "the fee for filing the notice of appeal."

[4] Plaintiffs claim attorneys' fees under 42 U.S.C. § 1988, which provides that "[i]n any action or proceeding to enforce a provision of section[] [1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Adsani to post a bond of $35,000 to cover the costs of appeal and a possible award of attorney's fees associated with that appeal." (internal quotation marks omitted)). That the court had already awarded retrospective attorneys' fees is thus of no moment. *Adsani* is not distinguishable from this case.

In determining whether the imposition of a cost bond is appropriate under Rule 7, courts consider four factors: "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *Stillman v. InService Am., Inc.*, 838 F. Supp. 2d 138, 140 (S.D.N.Y. 2011) (internal quotation marks omitted). Here, while Mr. Hasak has not shown bad faith or vexatious conduct, for the reasons discussed above in reference to Mr. Hasak's Rule 59 motions, the Defendant has not persuaded the Court that the grounds for his appeal are meritorious. Further, given Mr. Hasak's on-the-record representations to the Court regarding his finances during the October 21, 2015 conference call, there is a real risk that he would not be able to pay Plaintiffs' costs if his appeal is denied. Although Mr. Hasak's counsel's statements during the conference call indicate that it would be financially difficult for him to obtain a bond, "without any showing of [his] financial hardship," the Court cannot conclude that the imposition of a bond would be an "impermissible barrier to appeal." *Adsani*, 139 F.3d at 79. Nonetheless, in light of Mr. Hasak's representations regarding his financial situation, the Court will impose a bond in an amount less than Plaintiffs seek. Mr. Hasak will be required to post a bond in the amount of $50,000 to cover Plaintiffs' appellate costs and fees.

### III.  Conclusion

For the foregoing reasons, Defendant Hasak's first Motion [Doc. # 463] for New Trial or to Alter Judgment is GRANTED to the extent Mr. Hasak seeks an amended judgment and DENIED to the extent he seeks a new trial. The Clerk is requested to issue an Amended Judgment reducing the past economic damages award to $0. Defendant Hasak's second Motion [Doc. # 464] for New Trial is DENIED. Plaintiffs' Motion [Doc. # 488] for Bond is GRANTED in part and DENIED in part. Mr. Hasak is ordered to post a bond in the amount of $50,000. Plaintiff's Objection [Doc. # 493] to Defendant's Sur-Reply is SUSTAINED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of November, 2015.