UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, by and through his Parents and next friends, Mr. & Mrs. Robert Doe; and MR. ROBERT DOE; MRS. ROBERT DOE, *Plaintiffs*, *v.* DARIEN BOARD OF EDUCATION, ZACHARY HASAK, MELISSA BELLINO, and LAURA CONTE, *Defendants*. | Civil No. 3:11cv1581 (JBA) December 14, 2015 |

**RULING ON PLAINTIFFS' MOTION FOR FEES AND COSTS**

On August 4, 3015, after a nine-day trial, the jury in this case returned a verdict finding Defendant Zachary Hasak liable under 42 U.S.C. § 1983 for violating Plaintiff John Doe's Fourteenth Amendment substantive due process right to bodily integrity, but not liable for assault and battery, negligence, and reckless and wanton conduct. (Jury Verdict [Doc. # 460].) The jury awarded Plaintiffs $10,000 in non-economic damages and $90,000 in economic damages, for a total award of $100,000 in compensatory damages.[1] Plaintiffs now seek [Doc. # 473] attorneys' fees and costs of litigation totaling $1,214,918.75 and $128,398.38, respectively, for the three law firms that worked on this case (Mayerson & Associates, Attorney James Hall, and Attorney David C. Shaw). (*See* Mayerson Aff. [Doc. # 474] ¶ 19.)[2] Defendant opposes [Doc.

---

[1] The judgment was later reduced to $10,000 in non-economic damages and $0 in economic damages. (*See* Order [Doc. # 495].)

[2] There appears to be a typographical or mathematical error in Mr. Mayerson's summation of the costs and fees claimed by Attorney Hall. Mr. Mayerson states that Mr. Hall claims costs and fees totaling $90,832.65, but the sum of costs and fees in Mr. Hall's bill is $91,832.65. (See Hall Bill, Ex. H to Mayerson Aff. at 1.)

# 486].  For the reasons that follow, Plaintiffs' motion [Doc. # 473] for attorneys' fees is granted with modification.

## I.      Legal Standard

In a federal civil rights action pursuant to § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); *see also Matusick v. Erie Cnty. Water Auth.,* 739 F.3d 51, 84 (2d Cir. 2014) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (citations and internal quotation marks omitted)).

In interpreting § 1988, the Second Circuit has moved away from the "lodestar" approach to attorneys' fees, which multiplies an attorney's hourly rate and the number of hours he or she worked and adjusts the result, if necessary, to arrive at a reasonable fee award, instead adopting a case-specific approach for determining a reasonable fee to award. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110 (2d Cir. 2007) ("*Arbor Hill I*"), *amended on other grounds by* 522 F.3d 182, 184 (2d Cir. 2008) ("*Arbor Hill II*"). District courts are directed to "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" when considering "what a reasonable, paying client would be willing to pay." *Id.* at 184. To do this, courts should utilize both the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated*

*on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989),[3] as well as certain client-related factors:

> [T]he district court, in exercising its considerable discretion, [should] bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill I*, 493 F.3d at 117–18.

Once a court has determined the "presumptively reasonable fee," it "may still adjust that amount" upward or downward "based on relevant factors specific to the instant case," such as the level of success the plaintiff attained. *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. 3:03-CV-599 (CFD), 2011 WL 721582, at *3 (D. Conn. Feb. 22, 2011); *see also Robinson v. City of New York*, No. 05 CIV. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009) ("Following the determination of the presumptively reasonable fee, the court must then

---

[3] The *Johnson* factors include (1) the time and labor required by an attorney; (2) the novelty and difficulty of the questions presented by the litigation; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney because of acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiffs' success in the litigation.").

## II.   Discussion

Defendant raises a number of objections to Plaintiffs' claimed fees and costs. These are detailed below.

### A. Reasonableness of Hourly Rates

Defendant contends that Plaintiffs seek excessive hourly rates for each of the seven attorneys, as well as paralegals and legal interns, who worked on this case. (Opp'n Mot. for Fees [Doc. # 486] at 8–11.)In determining a reasonable hourly rate in connection with an application for attorneys' fees, district courts attempt to "ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

Where, as here, the prevailing party hires out-of-district counsel,[4] courts generally assess the reasonableness of that counsel's hourly rate by reference to "the hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). "[I]n order to receive an attorney's fee award based on higher out-of-district rates, a litigant must . . . persuasively establish[] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* at 172.

---

[4] Mayerson & Associates is located in New York City, but Plaintiffs' previous counsel, David Shaw and James Hall are located Connecticut.

### 1.  Attorney Gary Mayerson

Plaintiffs' lead attorney, Gary Mayerson, seeks an hourly rate of $650/hour, which he claims is appropriate in light of his skill and experience and the "unique, highly unusual and difficult" nature of this case. (Mot. for Fees at 6.)

Mr. Mayerson self-reports "nearly 35 years of solid and highly successful jury trial experience." (Reply at 8.) After graduating from Georgetown University Law Center in 1979, he became a litigation partner with a Manhattan law firm. (Mayerson Aff. ¶¶ 23–24.) In 2000, he formed Mayerson & Associates, "the very first law practice in the nation dedicated to the representation of children and adolescents diagnosed with autism and related developmental disabilities." (*Id.* ¶ 32.) "Since its inception in 2000, Mayerson & Associates has over 60 reported decisions at the federal/appellate level . . . ." (*Id.* ¶ 35.)  Mr. Mayerson is also the author of a book as well as a number of articles and several book chapters about legal issues relating to autistic children. (*Id.* ¶ 33; Mayerson CV, Ex. I to Mayerson Aff. at 1–6.) In addition, he has "served for nearly nine years as a member of the Board of Directors for Autism Speaks, and [he] head[s] up its national pro bono litigation program." (Mayerson Aff. ¶ 38.)

Defendant contends that "[t]he locality rates for the upper echelon of attorneys practicing in this district are in the range of $485/hr. to $525/hr" and Mr. Mayerson's hourly rate of $650 per hour exceeds the rate courts have awarded to even "the most esteemed civil rights attorneys in the State of Connecticut." (Opp'n at 7, 8.)

As noted above, however, out-of-district rates may be appropriate where a litigant "persuasively establishes that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 174. Plaintiffs here contend that their decision to hire out-of-district

counsel was reasonable because they "were not able to locate Connecticut counsel with the resources and desire to take this kind of case to trial." (Reply [Doc. # 487] at 7.)

The Court disagrees. Plaintiffs have not "persuasively establishe[d]" that they were likely to obtain a "substantially better" net result by hiring Mayerson & Associates over a Connecticut law firm. *Simmons*, 575 F.3d at 174. Although this case was unique and difficult, it did not require highly specialized knowledge of the IDEA, disability law, or the public school system. It was, at heart, a civil rights case, and there are many highly competent attorneys who practice this area of law in Connecticut. Plaintiffs have not shown otherwise. *Cf. Barkley v. United Homes*, LLC, No. 04–CV–0875, 2012 WL 3095526, at *6 (E.D.N.Y. July 30, 2012) ("A mere citation to a recent case from the Eastern District of New York and a statement that counsel in the Eastern District of New York could not be located, without more, does not satisfy the . . . requirement of a 'particularized showing' that in-district counsel were unable or unwilling to help plaintiffs."); *Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 90 (E.D.N.Y. 2010) ("Plaintiffs provide no specific information which would establish that local counsel with the requisite experience were unwilling or unable to take the case, or alternatively, no in-district counsel possessed such experience.").

Plaintiffs appear to concede that $650/hour is not in line with prevailing rates for civil rights work in Connecticut (*see* Reply at 8 ("[A] district court can choose to adjust and enhance the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee, or does not adequately measure the attorney's 'true' market value.")), and they offer neither the declarations of other attorneys nor attorneys' fee awards in similar cases as support for the reasonableness of their rates. Instead, they argue that Mr. Mayerson's rate is presumptively reasonable because in this case, unlike many others, "the

'market rate' issue is not a matter of conjecture or speculation." (Reply at 7.) Plaintiffs "agreed to . . . counsel's hourly rates" (*id.*), and have been paying those rates since the Court ruled on the motion for summary judgment in May 2015[5] (*see* Mayerson Aff. ¶ 41).

Plaintiffs' position finds support in the decisions of several district courts in this Circuit which have held that "when a sophisticated client pays attorneys' fees that it does not know it will necessarily recover, the rate paid is presumptively reasonable." *Wells Fargo Bank, NA v. Konover*, 2014 WL 3908596, at *5 (D. Conn. Aug. 8, 2014); *see Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 CIV. 139 (GEL), 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) ("[T]he fact that Nike, a highly sophisticated business client, has paid these bills, presumably after careful review by its general counsel or other senior business executives, is prima facie evidence of the reasonableness of the amount as a whole (beyond just the reasonableness of the hourly rates charged), since Nike could not have assumed that it would be reimbursed in full, or even in part."). The Second Circuit has, however, been less clear about the legal effect of actual payment on the reasonableness inquiry. *See Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 144 (2d Cir. 2001) ("[I]f the District Court again chooses to award fees, any evidence of the actual billing arrangement between [the litigant] and its counsel should be considered a significant, though not necessarily controlling, factor in the determination of what fee is 'reasonable'. . . .").

In any event, the Court finds that in this case, an hourly rate of $650 per hour is unreasonably high and is out of line with prevailing rates in civil rights cases in this district. *See,*

---

[5] Mr. Mayerson attests that initially, "plaintiffs agreed to 'flat fee' arrangements for the settlement discussions and conferences with the magistrate ($20,000), the motion for summary judgment ($45,000), and the 'hearsay' briefings ($20,000). Thereafter, plaintiffs agreed to compensate [the] firm at [their] regular hourly rates, and to reimburse [their] actual out-of-pocket expenses." (Mayerson Aff. ¶ 41.)

*e.g.,Valley Hous. Ltd. P'ship v. City of Derby*, No. 3:06CV1319 (TLM), 2012 WL 1077848, at \*5–6 (D. Conn. Mar. 30, 2012), *appeal dismissed* (Nov. 14, 2012) (awarding $400 hourly rate to attorney with thirty years of extensive legal experience in civil rights litigation and $485 hourly rate to attorney with forty-three years of legal experience whom the court described as "highly skilled and experienced"); *Vereen v. Siegler*, No. 3:07CV1898 (HBF), 2011 WL 2457534, at \*3 (D. Conn. June 16, 2011) (awarding a civil rights attorney with forty-three years of experience an hourly rate of $400 and his associate attorney a rate of $250/hour); *Bridgeport & Port Jefferson Steamboat Co.*, 2011 WL 721582, at \*6 (awarding $425 per hour to attorneys with thirty to forty-three years of experience and $225 to $275 per hour to associates); *Serricchio v. Wachovia Securities, LLC*, 706 F. Supp. 2d 237, 255 (D. Conn. 2010) (finding that a rate of $465 per hour is reasonable "[b]ecause of [the attorney's] extensive experience, high reputation, and remarkably successful results."). "[E]ven though [the Does] consented to the higher [out-of-district] rates [charged by Mayerson & Associates], the Court does not find that the . . . presumption [that in-district counsel would be adequate] has been rebutted." *Gray v. Toyota Motor Sales, U.S.A., Inc.*, No. 10-CV-3081 (JS) (ETB), 2013 WL 3766530, at \*4 (E.D.N.Y. July 16, 2013); *see Trudeau v. Bockstein*, No. 05–CV–1019, 2008 WL 3413903, \*6 (N.D.N.Y. Aug. 8, 2008) (finding that the fact that client actually assented to the rates was a consideration, but was not dispositive). Defendant has conceded that a rate of $450/hour would be reasonable, and the Court agrees. Mr. Mayerson's **hourly rate is reduced to $450**.

### 2.   Attorney Spencer Walsh

Ms. Walsh, a partner at Mayerson & Associates, seeks an hourly rate of $525. Ms. Walsh graduated from Fordham University School of Law in 1994, after which she practiced insurance, corporate, and real estate law, before joining Mayerson & Associates in 2008. (Walsh Resume, Ex.

I to Mayerson Aff. at 16.) She has been counsel at Mayerson & Associates for the last seven years. (*Id.*) As Defendant notes, "[t]here is no indication as to her level of expertise in litigating civil cases such as the present one" and "no support for the fee rate requested." (Opp'n at 9.) Defendant requests that the Court award Ms. Walsh no more than $350/hour. (*Id.*) In light of the Court's award of $450/hour to Mr. Mayerson and "[s]ince Ms. Walsh clearly is not as experienced as Mr. Mayerson, both in terms of the number of years she has been a litigator and has specialized in special education, her hourly rate should be much lower." *S.A. ex rel. M.A.K. v. New York City Dep't of Educ.*, No. 12-CV-435 (RMM) (MDG), 2015 WL 5579690, at *7 (E.D.N.Y. Sept. 22, 2015). Accordingly, the Court awards Ms. Walsh an **hourly rate of $350**.

### 3.   Attorney Maria McGinley

Attorney McGinley seeks an hourly rate of $350. Ms. McGinley graduated from New York Law School in 2009 and has been an attorney at Mayerson & Associates since June 2010. (McGinley CV, Ex. I to Mayerson Aff. at 7.) She has served as a member of the Board of the New Jersey Chapter of Autism Speaks since 2014 and has published several articles on legal issues relating to children with autism. (*Id.* at 9.) Defendant contends that because Ms. McGinley only has five years of legal experience, a rate of $200/hour is appropriate. (Opp'n at 9.) The Court agrees that an hourly rate of $350/hour is not in line with prevailing rates in the District. Ms. McGinley's rate is thus reduced to **$275/hour**.

### 4.   Attorney Jean Marie Brescia

Attorney Brescia seeks an hourly rate of $450. Ms. Brescia graduated *magna cum laude* from Harvard Law School in 1985, after which she worked as an associate at Sullivan & Cromwell and an attorney at the Legal Aid Society until 1994. (Brescia CV, Ex. I to Mayerson Aff. at 14–15.) From 1995 to the present, she has served as a hearing officer in proceedings relating to

students with disabilities, and since 2007, she has also been an adjunct professor of special education law at New York Law School. (*Id.* at 14.) She began to practice law again in 2012, and has worked as a Senior Attorney at Mayerson & Associates since then. (*Id.*) Defendant contends that because Ms. Brescia "has only been practicing in the area of representing families of children with developmental disabilities since 2012," she "is no more qualified than Ms. McGinley" an "hourly rate of $200 would be appropriate." (Opp'n at 10.) The Court disagrees. Ms. Brescia has been an attorney for twenty years and her CV demonstrates that she has significant experience with the legal issues related to disabled children. Nonetheless, the Court does recognize that Ms. Brescia appears to have limited experience with federal litigation, and until 2012, it had been a number of years since she practiced law. The Court believes that an **hourly rate of $350** is appropriate.

### 5. Attorney Jacqueline DeVore

Attorney DeVore seeks an hourly rate of $425. Ms. DeVore graduated from CUNY School of Law in 2005. (DeVore Resume, Ex. I to Mayerson Aff. at 12.) Since then she has served as an Assistant District Attorney in the Domestic Violence and Child Abuse and Sex Crimes Bureaus in Bronx County and a litigation attorney in the Special Education Unit of the New York City Department of Education. (*Id.*) She has been an associate at Mayerson & Associates since 2012. (*Id.*) Defendant contends that an "hourly rate of $200.00 would be appropriate for Ms. DeVore." (Opp'n at 10.) In light of Ms. DeVore's significant experience in the specific area of law at issue in this case and her ten years of practicing law, $200/hour strikes the Court as too low. The Court finds that an **hourly rate of $375** is reasonable.

### 6.  Attorney Jenna Wince

Attorney Wince seeks an hourly rate of $300. Ms. Wince graduated from New York Law School in 2008 and has been an associate at Mayerson & Associates since then. (Wince Resume, Ex. I to Mayerson Aff. at 17.) Her resume gives no indication that she has any experience with federal district court litigation. (*Id.*) Defendant asserts that a rate of $200/hour would be reasonable for Ms. Wince given the minimal amount of her demonstrated experience. (Opp'n at 10.) The Court finds **$250/hour** to be a reasonable rate for Ms. Wince.

### 7.  Attorneys David Shaw and James Hall

Attorney Shaw seeks an hourly rate of $500 and Attorney Halls seeks an hourly rate of $425. However, Plaintiffs submit no evidentiary support whatsoever for these requests.

The Court has been unable to locate any federal cases in which Mr. Hall was awarded attorneys' fees. The most recent case the Court has been able to find discussing an award of fees to Mr. Shaw is a 2008 IDEA case, in which the court, "taking into account the novelty and complexity of IDEA litigation, the length of Attorney Shaw's involvement in this case, [and] his undisputed expertise in this area of practice," awarded Mr. Shaw an hourly rate of $375. *M.K. ex rel. K. v. Sergi*, 578 F. Supp. 2d 425, 428 (D. Conn. 2008). As Defendant notes, however, Plaintiffs have not "demonstrate[d] that Mr. Shaw [or Mr. Hall] has any specialized experience in the area of civil rights litigation." (Opp'n at 11.)

The Court concludes that, given the paucity of evidence before it regarding Mr. Shaw's and Mr. Hall's abilities and experience related to the needs of this case, an **hourly rate of $350/hour**, which Defendant has conceded is reasonable, would be appropriate for both Mr. Shaw and Mr. Hall.

### 8.  Paralegals and Legal Interns

Plaintiffs seek $150/hour for paralegals Noelle Forbes, Sean LeVan, Mauricio Bertone, Jr., and an unnamed paralegal who worked for Attorney Shaw, and $125/hour for interns Daniel Oquendo, Lauren Kobrick, Blake Yagman. Defendant contends that the rate for paralegals should be reduced to $140/hour and the interns' rate should be reduced to $90/hour. This Court recently found that **140/hour** is a reasonable rate for paralegal work, *see Crawford v. City of New London*, No. 3:11-CV-1371 (JBA), 2015 WL 1125491, at *6 (D. Conn. Mar. 12, 2015), and the Court applies that rate here. Recent decisions in this District establish that $100/hour is a reasonable hourly rate for a legal intern or summer associate, and this Court likewise finds that **100/hour** is reasonable. *See Cumulus Broad. v. Okesson*, No. 3:10CV315 (JCH), 2012 WL 3822019, at *5 (D. Conn. Sept. 4, 2012) (finding $100/hour to be reasonable rate for summer associates); *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. 3:03-CV-599 (CFD), 2011 WL 721582, at *6 (D. Conn. Feb. 22, 2011) (same).

### B.  Reasonableness of Hours Requested

Defendant objects to Plaintiffs' attorneys' requested hours for three reasons: (1) they were excessive, duplicative or redundant; (2) they were vague or block-billed; and (3) they concerned activities that were unnecessary or unsuccessful.

### 1.  Attorney Hall's Requested Fees

As a preliminary matter, before reaching Defendant's objections to Plaintiff's fees, the Court must address Attorney Hall's fee request separately. Plaintiffs submit a single sheet of paper, listing in summary fashion, without any dates, what appears to be estimated amounts of time spent on various activities, in support of Attorney Hall's requested fees. (*See* Hall Bill.) This summary is far from the type of "contemporaneous time record[]" that the Second Circuit has

unequivocally held to be a "prerequisite for attorney's fees in this Circuit." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983); *see id.* (requiring contemporaneous time records to "specify, for each attorney, the date, the hours expended, and the nature of the work done"); *see also Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("*Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases. Indeed, after *Carey* there are few examples of this court permitting a district court to award fees in the absence of full contemporaneous records."); *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 443 (S.D.N.Y. 2001) ("Failure to support a fee application with contemporaneous records generally results in denial of any award."). "Lawyers are well aware that . . . they are valued principally on the basis of the time required. There is no excuse for an established law firm to rely on estimates made on the eve of payment and . . . entirely unsupported by daily records or for it to expect a court to do so." *In re Hudson & M. R. Co.*, 339 F.2d 114, 115 (2d Cir. 1964). Because Plaintiffs have not submitted contemporaneous time records accounting for Attorney Hall's time, the Court declines to award any fees for Attorney Hall's work.

### 2. Excessive or Duplicative Hours

Defendant identified a number of billing entries he claims to be excessive or duplicative. "The Second Circuit has left determination of redundancy in fee applications to the discretion of the district court." *Bridges v. Eastman Kodak Co.*, No. 91 CIV. 7985 (RLC), 1996 WL 47304, at *6 (S.D.N.Y. Feb. 6, 1996) *aff'd*, 102 F.3d 56 (2d Cir. 1996). However, "[w]here the requested amount of fees is excessive because the number of hours stated is greater than should have been required, the Court should reduce the stated hours accordingly." *Barile v. Allied Interstate, Inc.*,

No. 12 CIV. 916 (LAP) (DF), 2013 WL 795649, at *2 (S.D.N.Y. Jan. 30, 2013) *report and recommendation adopted*, No. 12 CIV. 916 (LAP), 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013).

The Court does not find any of Attorney Shaw's entries to be excessive or duplicative, and as such, his hours will not be reduced for that reason. With regard to Mayerson & Associates, Defendant's excessiveness/duplication objections can be grouped into several categories. First, Defendant contends that the 71 attorney hours and 10 paralegal hours spent on Plaintiffs' hearsay brief was excessive and should be reduced. The Court agrees. Although the hearsay issue was among the most critical and complicated issues in this case, and the briefing required careful and extensive research, the amount of time spent on this 18-page brief was excessive. Four attorneys and one paralegal worked on the brief for a total of 85.9 hours, by the Court's count. The Court will reduce the hours requested by each of the attorneys by 30%, yielding a reduction of: **4.2 hours from Ms. Wince; 8.5 hours for Ms. McGinley; 7.7 hours for Ms. DeVore; and 2.1 hours for Mr. Mayerson**.

Next, Defendant asserts that it is duplicative for several attorneys to bill for the same work (for example, for researching and drafting the same brief or for meeting together to discuss an issue). Again, the Court disagrees. "While it is true that redundant work should not be billed, many tasks in fact require or benefit from the attention of more than one attorney." *Bridges*, 1996 WL 47304, at *6. "[H]aving two attorneys research and participate in drafting a brief is a common practice and therefore not necessarily duplicative." *E.E.O.C. v. Local 638 of Sheet Metal Workers' Int'l Ass'n*, No. 71 CIV. 2877 (RLC), 1991 WL 278917, at *2 (S.D.N.Y. Dec. 18, 1991). "Furthermore, the time spent by two [or three] attorneys discussing the case with one another is properly billed." *Bridges*, 1996 WL 47304, at *6. "Necessarily, as tasks in a complex case are divided or shared, the lawyers are required to consult, and in this case that reasonably led to a

14

substantial amount of time spent in conference." *Raniola v. Bratton*, No. 96 CIV. 4482 (MHD), 2003 WL 1907865, at *5 (S.D.N.Y. Apr. 21, 2003).

Finally, Defendant claims that Plaintiffs' decision to send three attorneys to the pre-trial conferences, jury selection, and trial was excessive and duplicative. With respect to the pre-trial conferences, during which the jury charge was discussed and developed, and with respect to trial, "[t]he court finds nothing excessive or inappropriate about this billing. Attorneys seldom try cases alone; counsel for defendants certainly did not." *Bridges*, 1996 WL 47304, at *6; *see also Carey*, 711 F.2d at 1146 ("[P]revailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist."). The Court does not, however, believe that three attorneys were necessary for jury selection. Accordingly, the Court will **reduce Ms. McGinley's hours by 9** to account for her time spent at jury selection and half of her billed travel time (because travel was billed at half her usual rate).

### 3. Vague Entries and Block-Billing

Defendant additionally argues that Plaintiffs' hours should be reduced to account for vague entries and block-billing. Counsel seeking fees are "not required to record in great detail how each minute of [their] time was expended," *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983), but they are obliged "to keep and present records from which the court may determine the nature of the work done, [and] the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested," *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987). "[C]ounsel should at least identify the general subject matter of his [or her] time expenditures," and in the absence of such identification, a court may refuse to award fees based

on those entries. *Electro–Methods, Inc. v. Adolf Meller Co.*, 473 F. Supp. 2d 281, 305–06 (D. Conn. 2007).

Courts in this district, including this Court, have reduced fee awards when time entries do not refer to the specific matter worked on. While "preparation for hearing" is a permissible time entry not subject to reduction because it refers to a specific event and allows for a determination of the reasonableness of time spent, entries like "work on various items" and "work on documents" are too vague for a court to determine the reasonableness of time spent. *Electro-Methods*, 473 F. Supp. 2d at 305–06; *see also Rabin v. Wilson-Coker*, 425 F. Supp. 2d 269, 272–73 (D. Conn. 2006) (reducing the number of hours by five percent because the billing records contained entries such as "work on brief," even though most of the time entries were sufficiently detailed); *Mr. & Mrs. B. v. Weston Bd. of Educ.*, 34 F. Supp. 2d 777, 781 (D. Conn. 1999) ("Entries stating such vague references as 'review of file,' 'review of correspondence,' 'research,' 'conference with client,' and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter.").

With respect to Attorney Shaw, the majority of the billing entries to which Defendant purports to object on vagueness grounds are not in fact vague but rather relate to claims on which Plaintiffs were unsuccessful. Those objections will be addressed *infra*. The Court will, however, **reduce Mr. Shaw's hours by 2.4 hours** to account for several vague entries. The Court does not find Mr. Shaw's paralegal's entries to be vague and will not reduce his hours on that basis.

On the other hand, quite a few of Mayerson & Associates' billing entries are impermissibly vague. The billing records are rife with entries such as: "Phone with JD and GSM,"

"Correspondence," "Inter-office correspondence," "Discussion with GSM and MM," and "Meeting with clients." One entry reads: "Wrote various documents, conducted case related research, corrected/edited related letters." Another states in part: "Reviewed documents" and "sent various documents to various people." Such entries "do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter," *id.*, and accordingly, will be discounted from Plaintiffs' claimed hours. Based on the Court's review of Mayerson & Associates' billing records, the following number of hours will be deducted: **(1) Attorney Mayerson: 63.2 hours; (2) Attorney McGinley: 47 hours; (3) Attorney DeVore: 36 hours; (4) Attorney Wince: 9.2 hours; (5) Attorney Walsh: 5.6 hours; (6) Legal interns: 13 hours; and (7) Paralegals: 5.6 hours.**

In addition, many of the attorneys at Mayerson & Associates, and in particular Attorneys Mayerson, McGinley, and DeVore, as well as the legal interns, regularly utilized block-billing. For example, Mr. Mayerson's June 22, 2015 entry of 10.10 hours reads: "Motions, documents, and subpoenas; revise opening statement; review client's emails; review treatise and notate." His July 6, 2015 entry for 7.3 hours states: "Motions in am, return pm re trial options, cf clients re preference and revise and edit exam outlines for Harker and Luddy and edit openings and cf Gallo and Harker and finish prep of Does." Ms. McGinley's July 31, 2015 entry of 6 hours reads: "Prep for trial on Monday, organized documents, arranged the updated exhibit lists, contact with Source One, updated ECF filings, reviewed revised summation, discussion with GSM." Her August 2, 2015 entry of 8.5 hours states: "Prep with GSM on summation, reviewed documents and exhibits, Phone conversation with clients and client edits to summation, read and digested the trial transcripts that we received over the weekend." Ms. DeVore's August 3, 2015 entry of 13 hours reads: "Prep with GSM and MM before trial, trial attendance, research re: addressing

jurors' question, letters to Judge Arterton, read and strategized opposing counsel's letters to Judge Arterton."

This kind of "[b]lock-billing can make it difficult for a court to conduct its reasonableness analysis" for two reasons. *Hnot v. Willis Grp. Holdings Ltd.*, No. 01 CIV. 6558 GEL, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008). First, as is the case here, "a single billing entry might mix tasks that are compensable with those that are not." *Id.*   Because the Court here could not determine what portion of each block-billed entry was used for what purpose, where impermissibly vague entries were mixed with other entries, the Court was forced to estimate the amount of time spent on non-compensable activities.

Second, even where a block-billed entry does not contain non-compensable activities, "'commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities.'" *Comm'n Express Nat., Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *5 (E.D.N.Y. Feb. 17, 2006) (quoting *Soler v. G & U Inc.*, 801 F. Supp. 1056, 1061–62 (S.D.N.Y.1992)). "The remedy for such 'block' accounting is to apply percentage cuts in the attorneys['] fees." *Id.*; *see also Penberg v. HealthBridge Mgmt.*, No. 08 CV 1534 (CLP), 2011 WL 1100103, at *9 (E.D.N.Y. Mar. 22, 2011) ("[W]here counsel has engaged in block-billing, courts have used percentage reductions as a practical means of trimming fat from a fee application." (internal quotation marks omitted)); *Bank v. Ho Seo*, No. 06CIV.15445 (LT) (SRLE), 2009 WL 5341672, at *5 (S.D.N.Y. Dec. 16, 2009) *report and recommendation adopted as modified*, No. 06CIV.15445 (LT) (SRLE), 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010) ("Courts have routinely used across the board percentage cuts as a penalty for block billing."); *see, e.g., Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, No. 03 CIV.4148 (WHP), 2008 WL 5539688, at *3 (S.D.N.Y. Dec. 18, 2008) ("[T]he Court reduces the total hours billed by . . . fifteen percent for

18

block billing."); *Aiello v. Town of Brookhaven*, No. 94CV2622 (FB) (WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) ("Due to ambiguities created by this substantial use of block billing, and the resulting inherent difficulties the Court would encounter in attempting to parse out whether the number of hours spent on the work performed was reasonable, the Court finds that a ten percent reduction of the hours billed by the members of the Meyer firm is warranted."). Accordingly, the Court will reduce the number of hours claimed by **Attorneys Mayerson, DeVore, and McGinley, as well as the legal interns, by ten percent**.

### 4.   Unnecessary Work and Unsuccessful Claims

Finally, Defendant asserts that Plaintiffs' hours should be reduced for time spent on unnecessary work and unsuccessful claims.

The Supreme Court has explained that:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, . . . counsel's work on one claim will be unrelated to his work on another claim. . . . The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

*Hensley*, 461 U.S. at 434–35 (1983). Nonetheless, "[w]here the district court determines that the successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or are based on related legal theories, it is not an abuse of discretion for the court to award the entire fee," *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (internal quotation marks and brackets omitted), because "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee," *Hensley*, 461 U.S. at 435. Thus, in assessing Defendant's objections, the Court must assess whether or not the successful and unsuccessful

claims are inextricably intertwined. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) ("When a plaintiff has achieved substantial success in the litigation but has prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded.").

Here, Defendant contests the compensability of several categories of work performed by Plaintiffs' attorneys. With respect to Attorney Shaw, Defendants object to time spent on: (1) discovery related to the DCF and Board Defendants; (2) opposing the DCF and Board Defendants' motions to dismiss; (3) the mediation agreement between the Board of Education and the Plaintiffs; and (4) finding experts.

Although Plaintiffs succeeded against neither the DCF nor the Board defendants, much of the work Plaintiffs put in with respect to these defendants was inextricably intertwined with their work related to Mr. Hasak. The case against Mr. Hasak relied on obtaining evidence that he abused John Doe and that he had the opportunity to abuse John Doe. Both DCF and the Board of Education conducted investigations into the allegations of abuse. As a result, much of the discovery Plaintiffs sought from DCF and the Board was potentially relevant to proof of their claims against Mr. Hasak. Because there is no neat way to separate out much of the work spent on discovery and depositions relating to DCF and the Darien defendants, the Court will not reduce Attorney Shaw's claimed hours on that basis. Where it is clear that work pertained solely to the DCF or Board defendants, however, the Court will reduce Attorney Shaw's claimed hours. For example, time spent emailing Mrs. Doe regarding the DCF request for a pre-filing conference is not compensable. Nor is time spent incorporating DCF's attorney's comments into the 26(f) report.

Plaintiffs' work on the motions to dismiss is more clearly segregable from work on successful claims. Plaintiffs' claims against DCF were procedural – alleging that DCF failed to conduct a proper investigation into John Doe's claims. The DCF motion to dismiss claimed lack of standing, absolute immunity, sovereign immunity, qualified, immunity, and failure to state a claim. Likewise, the Board's motion to dismiss was based on failure to state a claim for procedural claims against the Board. None of the work on these motions would have been at all relevant to Plaintiffs' claims against Mr. Hasak. Accordingly, the Court will deduct from Attorney Shaw's claimed hours all time spent opposing the motions to dismiss. The Court will also reduce Attorney Shaw's hours for time spent working on the mediation agreement that the Board and Plaintiffs' signed, as it was not relevant to Plaintiffs' claims against Mr. Hasak.

Finally, Defendant objects to any time spent by Attorney Shaw (and Mayerson & Associates) on finding or interviewing experts because Plaintiffs did not call any experts to testify on issues relevant to Mr. Hasak. To the extent that the attorneys seek compensation for time spent interviewing or working with the experts who were utilized in Plaintiffs' opposition to summary judgment, that time is not compensable because those experts provided testimony relevant only to the procedural claims against the Board defendants. However, because Plaintiffs could not have known from the beginning that they would not utilize an expert in their case against Mr. Hasak (for example, an expert on signs of child abuse or an expert on Down's syndrome), time spent researching experts and looking for potential experts is compensable. In total, the Court will **reduce Mr. Shaw's claimed hours by 115** to account for work on unsuccessful claims.

The primary objection Defendant raises to Mayerson & Associates' claimed hours for work on unsuccessful claims is that Plaintiffs should not be able to recover for their work

opposing the Board defendants' motion for summary judgment. Indeed, Defendant objects to any time entry coded by Plaintiffs as relating to the motion for summary judgment. The problem with Defendant's argument, however, is that in its motion for summary judgment, the Board of Education raised what became central issues in the case, issues that were undeniably relevant to the claims against Mr. Hasak—was there admissible evidence to show that Mr. Hasak in fact abused John Doe and that Mr. Hasak had an opportunity to abuse John Doe? As a result, much of Plaintiffs' work in opposition to the Board defendants' motion for summary judgment was relevant to their claims against Mr. Hasak. To the extent the work was clearly not relevant—for example, research or depositions related solely to issues of whether the Board defendants had notice of the abuse or whether the Board had reasonable policies in place to prevent or investigate abuse—time spent on it will be deducted from Mayerson & Associates' claimed hours. However, the vast majority of Mayerson & Associates' work does not fall into that category. The Court will **reduce Attorney Mayerson's claimed hours by 7.3 and the legal interns' claimed hours by 9.8** to account for work on unsuccessful claims.

### C. Adjustments

Although the Supreme Court has "rejected a *per se* proportionality rule, i.e., proportionally linking the prevailing party's attorneys' fees to the degree of monetary success achieved, *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986), it has also held that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained," *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Because "the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount" where the "plaintiff has achieved only partial or limited success," courts may need to adjust the presumptively reasonable rate downward. *Barfield v. N.Y. City Health and Hosps.*

*Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). While the Court recognizes that "a successful private action for damages can 'contribute[] significantly to the deterrence of civil rights violations in the future,'" *Robinson*, 2009 WL 3109846, at *10 (quoting *City of Riverside*, 477 U.S. at 575), and that Plaintiffs faced an uphill battle in this case, the Court nonetheless believes some reduction is appropriate here to account for Plaintiffs' very limited economic success. This case began with sixteen defendants, of whom four remained by the time the case went to trial. Those four defendants were charged with a total of six counts; the jury found liability as to one defendant on one count; the jury awarded $100,000 in damages, but final damages after a post-trial reduction by the Court came to $10,000. The Court believes a fee award of $696,218 is somewhat excessive in light of this limited victory. Therefore, the Court will **reduce the presumptively reasonable fee by 10%.**

### D.  Awardable Costs

Attorney Shaw claims $21,337.90 in costs, Attorney Hall seeks $48,907.65, and Mayerson & Associates seek $58,152.83. Under Second Circuit precedent, awardable costs include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal citations omitted). "Identifiable, out-of-pocket disbursements for items such as photocopying, travel and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Aston v. Sec'y of Health & Human Servs.*, 808 F.2d 9, 12 (2d Cir. 1986). "Nevertheless, the fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920 (KAM) (VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (internal quotation marks and alterations omitted).

Defendant here objects to all of the costs claimed by Attorney Shaw and Mayerson & Associates on the grounds that they "have provided no receipts or other documentation regarding their claimed expenses" and "[a]s such, the defendants [sic] can not [sic] assess these expenses to see if they are reasonable, or if they relate to the prosecution of the claims against Zachary Hasak." (Opp'n at 14.) Defendant is correct. "In order [for a court] to determine whether costs were reasonably expended, the moving party must provide some 'explanation as to why the costs were necessary and some supporting documentation to show that these costs were incurred in connection with the [relevant claims].'" *Medina v. Donaldson*, No. 10 CIV. 5922 (VMS), 2015 WL 77430, at *17 (E.D.N.Y. Jan. 6, 2015) (quoting *Colon v. City of New York*, No. 09 Civ. 0008 (JBW) (CLP), 2012 WL 691544, at *24 (E.D.N.Y. Feb. 9, 2012), *report & recommendation adopted*, No. 09 Civ. 0008, 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012)). Where, as here, claims for expenses are "vague or unsupported by documentation," "[c]ourts either disallow or reduce the amount [of claimed] expenses." *Id.* (internal quotation marks omitted); *see, e.g., Adams v. City of New York*, No. 07 Civ. 2325 (FB) (RER), 2014 WL 4649666, at *10 (E.D.N.Y. Sept. 16, 2014) (reducing travel, postage and photocopying costs by 25% "as these expenses are unsupported by receipts or sufficiently detailed records").

With respect to Attorney Shaw, Defendant objects to $3,502.73 in costs on the grounds that it is unclear whether the claimed expenses were related to claims against Mr. Hasak. The Court agrees. Accordingly, Mr. Shaw's claimed costs are reduced by $3,502.73, as requested by Defendant. The Court additionally reduces the remaining claimed costs by 25%, or $4,458.79 to account for Mr. Shaw's failure to adequately document them, for a total **reduction in costs of $7,961.52**.

24

As to Mayerson & Associates, in addition to objecting to Plaintiffs' failure to provide documentation of their expenses, Defendant objects to a number of claimed costs as vague. He also reiterates his claims that three attorneys were not necessary for the pre-trial conference, jury selection, and trial (and therefore travel costs should not be compensable for all three attorneys), and that the motion for summary judgment was not relevant to Mr. Hasak (and therefore travel costs related to Mayerson & Associates' appearance at oral argument are not compensable). As previously stated, the Court will deduct the claimed costs for Ms. McGinley's appearance at jury selection but will permit costs for all three attorneys' travel to the pre-trial conferences, trial, and the oral argument of the motion for summary judgment. The Court largely agrees with Defendant's objections on vagueness grounds. As such, Mayerson & Associates' claimed costs will be reduced by $16,616.29. The Court additionally reduces the remaining claimed costs by 25%, or $10,384.14 to account for Mayerson & Associates' failure to adequately document them, for a total **reduction in costs of $27,000.43**.

Defendant objects to Attorney Hall's claimed fees for failure to provide documentation, vagueness, and because many of the claimed costs were for experts not utilized against Mr. Hasak. Other than expert invoices, the only documentation Attorney Hall has provided is a list of items for which he seeks costs (but not the amount he claims for each item) and a total amount of claimed expenses. Because the experts were not used in the case against Mr. Hasak and the Court cannot determine how much of the claimed costs for other items are compensable based on the scant documentation provided, Attorney Hall is awarded no costs.

III.    Summary

A.  Fees[6]

| Individual | Rate | Claimed Hours | Total Claimed Fee |
|---|---|---|---|
| Shaw | $350 | 814.1 | $284,935 |
| Shaw Paralegal | $140 | 34.3 | $4,802 |
| **Shaw Total** | - | - | **$289,737** |
| Mayerson | $450 | 464.3 | $208,935 |
| DeVore | $375 | 363.3 | $136,237.50 |
| McGinley | $275 | 436.5 | $ 120,037.50 |
| Wince | $250 | 242.3 | $60,575 |
| Walsh | $350 | 41.7 | $14,595 |
| Brescia | $350 | 2 | $700 |
| Mayerson Paralegals (Forbes, LeVan, Bertone) | $140 | 59.5 | $8,330 |
| Interns (Oquendo, Kobrick, Yagman) | $100 | 220.5 | $22,050 |
| **Mayerson & Assocs. Total** | - | - | $571,460 |

At the hourly rates determined by the Court, Mayerson & Associates' claimed fee is $571,460 and Attorney Shaw's claimed fee is $289,737.

To reflect the Court's findings above, these sums are reduced by these amounts:

| Individual | Hours Deducted | Total Fee to be Deducted |
|---|---|---|
| Shaw | 117.4[7] | $41,090 |
| Shaw Paralegal | 0 | $0 |
| **Shaw Total** | - | $41,090 |
| Mayerson | 72.6[8] + 46.4[9] = 119 | $53,550 |

---

[6] Attorney Hall is excluded from this table, as the Court declines to award fees for his work, in the absence of any contemporaneous time records supporting his fee request.

[7] As discussed, *supra*, 2.4 hours are subtracted for vague entries and 115 hours are subtracted for work on unsuccessful claims.

| DeVore | $43.7^{10} + 36.3^{11} = 80$ | $30,000 |
| McGinley | $64.5^{12} + 43.7^{13} = 108.2$ | $29,755 |
| Wince | $13.4^{14}$ | $3,350 |
| Walsh | $5.6^{15}$ | $1,960 |
| Brescia | 0 | $0 |
| Mayerson Paralegals (Forbes, LeVan, Bertone) | $5.6^{16}$ | $784 |
| Interns (Oquendo, Kobrick, Yagman) | $22.8^{17} + 22.1^{18} = 44.9$ | $4,490 |
| **Mayerson & Assocs. Total** | - | $123,889 |

[8] As discussed, *supra*, 63.2 hours are subtracted for vague entries, 7.3 hours are subtracted for work on unsuccessful claims, and 2.1 hours are subtracted for excessive or duplicative billing.

[9] This figure represents 10% of the hours billed by Mr. Mayerson, which, as explained above, the Court is deducting from Mr. Mayerson's claimed hours to account for block billing.

[10] As discussed, *supra*, 36 hours are deducted for vague entries and 7.7 hours are deducted for excessive or duplicative billing.

[11] This figure represents 10% of the hours billed by Ms. DeVore, which, as explained above, the Court is deducting from Ms. DeVore's claimed hours to account for block billing.

[12] As discussed, *supra*, 47 hours are deducted for vague entries and 17.5 hours are deducted for excessive billing.

[13] This figure represents 10% of the hours billed by Ms. McGinley, which, as explained above, the Court is deducting from Ms. McGinley's claimed hours to account for block billing.

[14] As discussed, *supra*, 9.2 hours are deducted for vague entries and 4.2 hours are deducted for excessive or duplicative billing.

[15] These hours are deducted for vague entries.

[16] These hours are deducted for vague entries.

[17] As discussed, *supra*, 13 hours are subtracted for vague entries and 9.8 hours are subtracted for work on unsuccessful claims.

[18] This figure represents 10% of the hours billed by legal interns, which, as explained above, the Court is deducting from the legal interns' claimed hours to account for block billing.

Deducting the amounts listed in "Total" above from each firm's claimed fee yields the following presumptively reasonable fees:

> <u>Shaw</u>: $248,647 ($289,737– $41,090)

> <u>Mayerson & Associates</u>: $447,571 ($571,460 – $123,889)

Each of these fees is further reduced by 10% to account for Plaintiff's limited success. Accordingly, Plaintiff is awarded the following fees: <u>Shaw</u>: $223,782; <u>Hall</u>: $0; and <u>Mayerson & Associates</u>: $447,571 for a total of **$626,596.**

### B.  Costs

The Court's award of costs, discussed above, is as follows: <u>Shaw</u>: $13,376.38; <u>Hall</u>: $0; <u>Mayerson & Associates</u>: $31,152.40, for a total of **$44,528.78**.

IT IS SO ORDERED.

              /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of December, 2015.